LEE MORRIS AND ANOTHER V. WESLEY BYERS' HEIRS.

Actual knowledge, on the part of a subsequent locator, of a previous location, precludes him from deriving any advantage from the fact that the Surveyor's office contained no evidence thereof at the date of his subsequent location.

A formal entry of a location of a duplicate certificate, at a certain date, does not preclude the locator from proving that a location of the original certificate had been previously made by him upon the same land ; that the adverse party had actual notice thereof; the latter entry being therefore but a renewal of the former.

Where a certificate for land is lost, and a duplicate is obtained, the duplicate takes the place of the original, by operation of law.

Those headright certificates of persons residing near the boundary line between the United States and Texas, which were reported to be genuine by the travelling Board, but were not recommended for patent, because of the uncertainty whether, upon the running of the line, the claimants would be found to be in Texas, were not included in subsequent legislation respecting fraudulent certificates, nor in the clauses of the State Constitution relating thereto, and required no judicial or (it seems) legislative action to authorize patents to issue thereon ; but, it seems, the Commissioner of the General Land Office is authorized to hear proof, and, upon being satisfied that the claimant resided on this side of the line, as afterwards run, to issue the patent.

See this case for what is said about a presumption of title out of the State, after continuous possession for a number of years.

Appeal from Bowie. Lee Morris, one of the defendants, and the only one whose survey conflicted with the proposed survey of the plaintiffs, was a party to the proceeding before the Justice and six jurors, which was decided against Byers, and the location now claimed by him was a subsequent one, covering part of the land which in the former proceeding was not disputed to belong to Byers' improvement. The Surveyor's office contained no evidence of any location or survey of Byers' certificate.

*M. D. Rogers* and *S. M. Hyde,* for appellants.

*A. Morrill* and *S. H. Pirkey,* for appellees.

LIPSCOMB, J. This suit was brought by the appellees, the heirs of Wesley Byers, to quiet title to certain lands claimed by the heirs, through their ancestor.

It appears from the record, that Wesley Byers, the ancestor, settled upon the land in question, in 1831, and continued in the peaceable possession thereof, with claim of title, until his death ; which possession has continued peaceably and without interruption in the said heirs ever since, and that they had made improvements to the value of ten thousand dollars ; that Wesley Byers obtained a certificate of headright from the Board of Land Commissioners for Red River county, dated the

31st day of January, A. D. 1838, which certificate he placed in the hands of David Lane, Deputy Surveyor of Red River county, some time in February or March, 1842, with directions to survey the land allowed to him, including his residence; that the survey was made, with the exception of one, the closing line, which interfered with some other settlers, and was so far stopped by the Surveyor; and a suit was commenced to try the right of these settlers and Wesley Byers, to the land so claimed. There does not appear to have been any doubt, in that suit, as to Byers' right to the location so far as to include his improvement and settlement; but as to the particular form of the survey, that it should be run so as to exclude the other settlers; and this suit was not terminated until April, 1848, and the mandate from the Supreme Court, in which Court it was finally decided, was not filed in the Court from which the suit had been taken, until 1st February, 1849; that in the mean time the certificate and the field notes of the survey, as far as it was made, were lost. On the 7th February, A. D. 1850, an Act of the Legislature of the State was passed, requiring the Commissioner of the General Land Office to issue "a patent to the heirs of Wesley Byers for one league and one "labor of land, on first class certificate, No. 279, issued to said "Byers by the Board of Land Commissioners." On the 20th of July, A. D. 1850, the heirs of Byers procured a duplicate of the lost certificate from the General Land Office, and on the 3d of September, A. D. 1850, filed the said duplicate and located it on the land in dispute, and requested the County Surveyor to survey for them the land so designated. It was not done by the Surveyor, and their request was renewed in 1853 and in 1854. The Surveyor assigned as a reason for not surveying the land, that it had been previously filed on by Morris, and that he would let the Court decide on the better right. The file was made by the defendants, who are the appellants in this Court, on the 16th day of July, A. D. 1849, with Graham as the Surveyor for the Bowie District; and on the 14th day of April, 1850, it was surveyed by Holcomb, act-

ing as Deputy for Graham, and the field notes returned to the General Land Office; disapproved by the Commissioner on account of the inaccuracy of the survey, and returned to the appellants, who some time after the 3d of September, 1850, applied to Pirkey, the then Surveyor of the District of Bowie county, to re-survey and correct the errors of the former survey, which he refused to do; after which suit was brought. There was a trial and a verdict for the heirs of Byers, on which a decree was made, annulling the claim of the appellants and ordering the County Surveyor to survey the land in question for the heirs of Byers, from which appellants appealed to this Court.

The appellants contend that the right accrued from the date of their file with the Surveyor; that the appellees had no right, at that time, and their claim to the land in question does not go farther back than their file, made 3d September, 1850, and that that must be regarded as the date of their location. We cannot so regard it, but believe that by relation their right is carried back to the location, made with David Lane, the Surveyor, in February or March, 1842. The loss of the field notes and the certificate could not so far affect the location as to vacate it, especially when the location was well known to those who are attempting to take advantage of such loss. The evidence shows that it was known to the appellants, and that they acknowledged the validity of the claim of Byers, to so much of the location as included his residence and improvements. The file, made by the appellees with the Surveyor Pirkey in September, 1850, after procuring a duplicate certificate, affords no grounds to suppose they had relinquished the first location. It was only a renewal or reiteration of a demand to have the land surveyed; supplying, in this application, the loss of the original. The face of the duplicate, issued by the General Land Office, shows what its legal effect is, and was, without its having been so expressed. An extract from the duplicate certificate is as follows, i. e.: "This duplicate "will therefore entitle the legal representatives of Wesley

"Byers, deceased, to all the benefits granted in the said origi-"nal certificate;" thus recognizing every right that accrued under the original.

The defendants, the appellants in this Court, say that whatever rights the heirs of Byers had originally, under the certificate issued to him as his headright, were forfeited for failing to show that it had either been recommended as genuine and valid by the travelling Board of Commissioners appointed under the law to detect frauds and fraudulent certificates, or that by a judicial decision it had been adjudged to be valid. They allege that it was not recommended for patent, and if not adjudged to be valid, in a suit brought before the time extended by the Constitution of the State expired, was forfeited, and could not be revived, even by Act of the Legislature, to the prejudice of those who had acquired vested rights before such Act of the Legislature was passed.

The second Section of the 11th Article of the Constitution of the State (Hart. Dig. p. 78,) directs "that the District " Courts shall be open until the first day of July, one thousand " eight hundred and forty-seven, for the establishment of certif-"icates for headrights not recommended by the Commissioners "appointed under the Act to detect fraudulent land certifi-" cates ; and all certificates above referred to, not established " or sued upon before the period limited, shall be barred, and " the said certificates, and all locations and surveys thereon, " shall be forever null and void," &c.

We will enquire if the certificate was recommended as genuine and valid ; and secondly, if it was not, and required some confirmatory act to support it, was it competent under the Constitution, for the Legislature to revive rights that had been lost, and give those rights a priority over rights acquired by others before the Act of the Legislature, revalidating the certificate. The land on which Byers resided at the Declaration of the Independence of Texas, was situated near what was supposed to be the boundary between Texas and the United States, but the boundary had not been run. Hence, there were a

large number of citizens, who had received certificates, that the travelling board were not certain which side of the line they might be found to have resided, after that line should have been run out and agreed upon by the two sovereignties, the United States and Texas. The Commissioners, therefore gave a special recommendation, that the certificates were genuine, but it was not yet certain whether they were valid and binding on the Republic of Texas, as the persons who had received them might not have resided in Texas. We cannot regard this action of the travelling board as a rejection of the certificate, but a direct recommendation of it, depending upon a contingency not provided for by the law, should that contingency turn out in favor of the person in whose favor the certificate issued, to wit : that after the line had been settled, he should be found to have resided in Texas. That fact, without any judicial enquiry, would authorize a patent to be issued for land surveyed under it. We regard it as a case not fully provided for by the law establishing the travelling board, and not within the case in which the parties to a rejected certificate are required to bring suit to establish the validity of their certificate. The doubt about the certificate was one that could not be at that time solved by a judicial investigation. It presented a political and not a judicial question, as to where the boundary line should run : a question that could be settled by the soverignty, or political authority alone. We regard this special recommendation as furnishing ground only for withholding the patent upon such surveys, until after the line had been run. After it had been run, a Surveyor who surveyed a location of a certificate, so recommended for a person whose residence proved to be within Texas, would have been legally authorized to do so, from his own knowledge of the fact of the residence so falling on the Texas side of the line, without any judicial action on the question. And on the return of his survey so made, the Commissioner of the General Land Office would have been authorized to issue a patent, on being satisfied from the best sources within his reach, that the certificate had issued

to one who resided, at the date of the Declaration of the Independence of Texas, within the jurisdiction of the Republic; and this is believed to have been the practice at one time in the General Land Office.

When Byers made his location with David Lane, the Surveyor, the line had been run, and his residence fixed to be within Texas, and we have no doubt that the location was valid, and if the survey had been completed and returned to the General Land Office, it would have entitled him to a patent without any judicial action whatever, on the special recommendation of the Commissioners.

We believe that the location made with Lane in 1842, was not lost, and that it can well be sustained without the aid of the Act of the Legislature, of February, 1850; because it had never been forfeited. If, however, there were any doubt, the Act of the Legislature would remove all difficulties ; and perhaps it was safer for the appellees, to have the Act of the Legislature in their favor, not only on account of the doubt with the Commissioner of the General Land Office, but because of the loss of the certificate and survey. Legislation could not weaken their rights ; and if not obnoxious to the objection taken by the appellants, it puts their rights beyond all doubt. We do not regard the provision of the Constitution, referred to, as at all in the way of the Act of relief passed by the Legislature. The Constitution refers clearly, in our opinion, to a different class of cases, already discussed by us. It refers to rejected certificates, on which suit was required to be brought ; and, as we have before said, this is not a rejected certificate, and therefore not embraced by the Constitution, nor by any other law requiring that its validity should be vindicated by a suit to be brought in the District Court. And under such circumstances, whatever right the Act conferred, related back to the first location made with Lane.

From the view we have taken of this case, it is altogether immaterial, whether the appellants' file was made with a legally authorized Surveyor or not. The result would be the same ; it could not affect the rights of the appellees.

There is one ground on which the right of the heirs of Byers could have been sustained, had they been sued, even had a patent been granted to the appellants on their location, and that is the long-continued possession and improvements with a claim of title, and without any interruption of their possession ; that is, a presumption would be raised in law, of a title lost, by time and accident. The possession was for more than twenty years; a less time, say fifteen years, continued and uninterrupted enjoyment, would raise that presumption. But we believe they have sustained the title without resorting to presumption.

There is not believed to be anything else in the case requiring a particular notice. The judgment is affirmed.

Judgment affirmed.