T. W. HOUSE ET AL. *v.* AMANDA TALBOT, EXECUTRIX, ET AL.

FORFEITURE OF SURVEY—ABANDONMENT OF LOCATION.—B located .a land certificate June 20, 1852; survey of same June 30, 1852; field-notes returned to the general land office June 7, 1853, without return of approval by surveyor, though the records of the surveyor's office showed registry of the field-notes. On June 30, 1853, C, who appeared to have had an interest in the certificate, withdrew the field-notes from the general land office, and two days afterwards B relocated the certificate on the same land; but neither the field-notes and

certificate of relocation nor the original certificate were returned or filed in the general land office within the year following. On June 13, 1871, a duplicate of the original certificate was filed in the general land office. On April 14, 1870, D, having actual notice of B's claim, filed on the same land, and on March 9, 1871, had a survey made, and a patent issued to him July 20, 1871. The evidence tended to show that at the date of the location of D's certificate B's field-notes were not in the general land office. B paid taxes on the land and exercised acts of ownership from 1853 to 1872. In a suit by B against D for the recovery of the land: *Held*—

1. The failure of B to have the certificate, with the field-notes of his survey, returned to the general land office, did not work a forfeiture of his survey, if valid in other respects.

2. The withdrawal of B's field-notes in June, 1853, and his failure to procure their return to the general land office until after the location of the land by D in April, 1870, constituted an abandonment and forfeiture in law of B's location, whatever may have been his intention.

Error from Williamson. Tried below before the Hon. A. S. Walker, special judge.

The opinion states the material facts.

*Hancock, West & North* and *R. H. Ward* and *D. G. Smith*, for plaintiffs in error.

I. The evidence disclosed that the land in suit, upon which the patent to the heirs of John Thomas was issued, was subject to location when this location was made, and this patent so issued conferred a better title than that of the defendants in error under the location made by virtue of the Andrew Roach certificate. (Paschal's Dig., arts. 4526, 4566, 4573, 7089; Houston and Texas Central Railroad Co. *v.* McGehee, 49 Tex., 481; Johnson *v.* Eldridge, 49 Tex., 507.)

(An exhaustive written argument was also filed by C. S. West, Esq., but its length precludes insertion.)

*Makemson & Fisher*, for defendants in error.

I. Was there a valid location and survey of the Andrew Roach certificate made prior to the location, survey, and patent of the Thomas certificate?

The Andrew Roach certificate, number $\frac{2298}{2399}$, was, on the 2d of June, 1852, placed in the hands of the district surveyor of Milam land district, by Elias W. Talbot, for location.

The certificate was duly located and the land surveyed on June 30, 1852, and the field-notes duly recorded and returned to the general land office on the 7th of June, 1853, and there filed. The surveyor's fees were paid July 17, 1872, by Elias W. Talbot.

.These acts, we submit, constitute a legal and valid location. (Morris *v.* Byers, 14 Tex., 278; Ward *v.* Conner, 33 Tex., 566.)

There having once been a valid location and appropriation of the land by virtue of the Andrew Roach certificate prior to the location of the Thomas certificate, has the same, by any act of defendants in error, been abandoned or forfeited?

We refer to the testimony of J. W. Talbot; to the application of E. W. Talbot for duplicate certificate May 8, 1871; to the duplicate certificate obtained June 13, 1871; to the testimony of John J. Dimmitt that the land was claimed by the Talbots; to the payment of taxes for over twenty years; to the sale of this land by E. W. Talbot to Charles P. and Thomas Talbot on December 30, 1866, and the reconveyance by them to E. W. Talbot in 1875. (Morris *v.* Brinlee, 14 Tex., 285; Morris *v.* Byers, 14 Tex., 278.)

II. In reply to the authorities cited by plaintiffs in error, we say the Roach certificate was located under the act of February 10, 1852, by the terms of which, it will be seen, the certificate was not required to be returned to the general land office; and while it may have been the custom to return certificates to the general land office, yet until the act of August 30, 1856, there was no law in Texas requiring this to be done. Section 4573 of Paschal's Digest, cited by plaintiffs in error, is a part of this act, and by its terms the rights of plaintiffs are protected and excepted.

The case of Johnson *v.* Eldridge was a case dependent on the act of November 29, 1871, Eldridge having withdrawn

his certificate from the general land office; while in the case at bar, Talbot, so far from withdrawing his certificate or doing any act tending to show an intention to abandon and surrender his rights to this land, made every effort to perfect and establish his claim and title. He had the survey made, returned the field-notes, paid the surveyor's fees, obtained a duplicate certificate and applied it to the location, and he paid the taxes on it from the date of his location in 1852 until 1872. He sold it and conveyed it by deed; then purchased it again; entered upon and erected improvements, and he is now, and has been for several years, in actual possession of it.

BONNER, ASSOCIATE JUSTICE.—This cause was tried by the judge presiding without the intervention of a jury, and judgment rendered in favor of the plaintiff below, Amanda Talbot, as executrix of the estate of Elias W. Talbot, deceased.

Among other alleged errors assigned is the following: That the court erred, in fact and in law, in rendering judgment for the plaintiff on the pleadings and evidence, and in not rendering judgment for the defendants.

The material facts are, substantially, that the plaintiff is the owner of the Andrew Roach certificate located upon the land in controversy, and that the defendants below, T. W. House and others, were the owners of the John Thomas certificate, under which it was patented; that the Roach certificate was located June 20, 1852, surveyed June 30, 1852; and the field-notes returned to the general land office June 7, 1853. The copy thus returned failed to show that they were approved and recorded by the surveyor of Milam land district, as required by law. (Paschal's Dig., art. 4543.)

On the trial, however, the original books of the surveyor's office were introduced, which showed that the field-notes had been recorded therein.

On June 30, 1853, J. W. Talbot, a brother of Elias, and who appears to have had an interest in the Roach certificate, withdrew the field-notes from the general land office. The

evidence fails to show positively why this was done, though it may be presumed that it was for the purpose of correcting the defect in the certificate of the surveyor, and to relocate the land under the act of February 10, 1852. (Paschal's Dig., art. 4563.)

That the latter was one of the objects intended, is evident from the fact that, on July 2, 1853, two days after the withdrawal of the field-notes, Elias W. Talbot relocated the Roach certificate on the land in controversy.

It does not appear from the record that the field-notes and a certificate of this relocation were filed in the general land office within one year thereafter, as required by section 3 of the act of February 10, 1852, (Paschal's Dig., art. 4564,) or that they were ever so filed. Neither does it appear that the original Roach certificate was ever returned to the general land office; but the testimony tends strongly to prove to the contrary. This certificate having been lost, on June 13, 1871, a duplicate was obtained, and filed same day in the general land office.

On April 14, 1870, previously thereto, the Thomas certificate was located upon the land in controversy, the survey made thereunder March 9, 1871, recorded the next day, and the patent, under which defendants claim, issued thereon July 20, 1871.

The testimony tends to prove that at the date of the location of the Thomas certificate, April 14, 1870, the Roach field-notes were not in the general land office, having been previously withdrawn June 30, 1853, and it is reasonable to presume that the land-office copy of same offered by plaintiff in evidence was not again returned there until the attention of Elias W. Talbot was called to the difficulty in regard to his location, and the loss of his certificate, by the action of the defendants in locating the land.

The defendants, at the time of their location, had actual notice that the land was claimed by the Talbots, and the testimony shows that these parties paid taxes on the land from

1852 or 1853 until 1872, and exercised acts of ownership over it. Elias W. Talbot died in December, 1876, after which—and some years subsequent to the date of defendants' patent—the plaintiff, as his executrix, erected a small house upon the land and placed a tenant therein.

Under the facts as thus presented, the material questions in the case are—

1. Was the location and survey made for Elias W. Talbot by virtue of the Roach certificate, forfeited by the failure to return the certificate to the general land office ?

2. Was the same forfeited by the withdrawal of the field-notes June 30, 1853, and the failure to return them before the date of defendants' location by virtue of the Thomas certificate ?

First. However desirable that the practice should have been to have required that the certificate, when appropriated in full by the location, should have been returned with the field-notes of the survey to the general land office, yet we are not prepared to say that the failure to do this would have forfeited a location valid in other respects.

Tested by the ordinary rules of construction, the language of the several acts of the Legislature and of the Constitution of 1869, upon this subject, would lead to the conclusion that such was not the intention of the law-makers. (Paschal's Dig., arts. 4562, 4563, 4564, 4573, 7096, 7097, 7098; Const. 1869, art. 10, secs. 2–4.)

Second. We are of opinion that, under the evidence, the withdrawal of the field-notes of the Roach survey from the general land office, June 30, 1853, and the failure to return them until after the location of the Thomas certificate, April 14, 1870, a period of over sixteen years, was an abandonment and forfeiture of the Roach location in law, whatever in fact may have been the intention of the parties.

This was the construction given by the commissioner of the general land office, as shown by the issuance of the patent upon the Thomas certificate.

By section 1 of the act of February 10, 1852, the field-notes of all surveys made previously thereto were required to be returned to the general land office on or before the 31st of August, 1853, or the surveys were declared to be null and void.

By section 2, in the event surveys were not thus returned by that date, the owner had the right to have the certificate relocated, without being compelled to have the land actually resurveyed, provided the land had not been previously located by some other person.

By section 3, the surveyor was required to enter such relocation upon the record of field-notes of his office and to duly certify the same to the commissioner of the general land office, and the field-notes of the survey and this certificate of relocation were required to be filed in that office within one year after such relocation.

By section 8, all lands theretofore located by any genuine land claim were required to be surveyed within twelve months from the passage of the act, and all located thereafter within twelve months from the date of location, or the locations were declared null and void and the lands subject to location and survey as any other vacant and unappropriated domain.   (Paschal's Dig., arts. 4562, 4563, 4564, 4568.)

The evident intention of the Legislature was to require prompt return to the general land office of the field-notes of such surveys, so that the residue of the public lands might be ascertained, and to enforce this by forfeiture of the location and survey.

This was a necessary and reasonable provision, and the evidence shows that it was the misfortune of plaintiff's intestate not to have complied therewith, and hence to have forfeited his location and survey.

The cases of Morris v. Byers, 14 Tex., 278, and Morris v. Brinlee, 14 Tex., 285, relied upon by counsel for appellees, are different in essential features from the one now under consideration.   They were contests between two locations,

without, as in this case, a patent upon either. They originated before the act of February 10, 1852.

The division into many sub-land districts of the Red River land district, within which the locations had originally been made, resulted in such confusion as called for great liberality on the part of the courts.

The original locators had been, for many years, actually residing upon and claiming the lands, and, as to one of them, improvements had been made to the value of $10,000, and persistent efforts had been used by them to have their surveys made, and the delay was not attributable to any fault or negligence on their part.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.