## W. C. SNIDER v. O. H. METHVIN ET AL.

(Case No. 983.)

1. PRACTICE — SEVERANCE.— When, in trespass to try title, the interest of a defendant is separate and distinct from that of co-defendants in the land sued for, it is not error to allow a severance after a joint answer filed by all the defendants.

2. EVIDENCE.— The fact that papers evidencing an appropriation of land have been marked filed, in the general land office by the land commissioner, imparts to them no validity, if in fact the location of the certificate by which the land was sought to be appropriated was never received by the surveyor, and the field notes of the survey were never certified to by him or his deputies.

3. GENERAL LAND OFFICE.— When a paper required by law to be filed in the general land office is there filed, it cannot be withdrawn, except under a law authorizing it, and by some person authorized to withdraw it.

4. STATUTES CONSTRUED.— Every paper once legally filed in the general land office, prior to the adoption of the act of November 29, 1871 (Pasch. Dig., 7096–7098), and not withdrawn under a law authorizing it, and by one having authority to withdraw it, was in contemplation of that law "*on file*" in that office.

5. GENERAL LAND OFFICE.— A paper is deemed to have been filed in the general land office only when it shall have been delivered into the custody of the commissioner, or of some one appointed by him under law to receive it, to be kept in the proper place for the inspection of parties interested. Following Beal *v.* Alexander, 6 Tex., 541; and Holman *v.* Chevallier, 14 Tex., 339.

6. STATUTES CONSTRUED.— Neither of the acts in force prior to the act of November 29, 1871 (Pasch. Dig., 4562–4566), expressly made it necessary to file in the general land office the certificate under which a survey was made, within twelve months; the act of November 29, 1871, required the certificate or other evidence of right to land to be returned with the survey.

7. SAME.— The word *return*, in all the statutes above referred to, meant the transmission to, and deposit of the certificate in, the general land office with intent that it should there remain; and not a retransmission and redeposit after the certificate or survey had once been deposited in the general land office and afterwards "withdrawn."

8. SAME.— The "withdrawal" contemplated by the statute was intended to designate the act of the owner or some one for him, consenting that by his act the location and survey formerly made should become null.

9. SAME.— The theft or unauthorized withdrawal of a certificate from the general land office will not have the effect of rendering null a valid location and survey.

10. SAME.— Pasch. Dig., art. 7097, has no application to a case in which the certificate upon which a survey was made had once been properly deposited prior to the passage of that act, unless subsequent to the deposit, and prior to the passage of the act, the owner or controller of the certificate had withdrawn it.

11. STATUTE CONSTRUED.— See opinion for construction, in art. 7098, Pasch. Dig., of the words "return" and "withdrawn," as applicable to field notes of a survey.

12. WITHDRAWAL OF CERTIFICATES.— If the owners of certificates filed with their surveys prior to the act of November 29, 1871 (Pasch. Dig., 7096–7098), knew that they had been taken from the general land office illegally, it would have been proper for them to have supplied duplicates at the earliest period after knowledge of the loss; but even their failure to do this would not subject them to the penalty imposed by the statute, unless they directly or indirectly aided in some way in such illegal taking.

13. SAME.— If, with such knowledge, they took no steps to place in the general land office proper evidence of their continued claim, their negligence might enable others to acquire rights by location which the law would protect; but no one with knowledge of the continued claim of such persons could acquire such rights.

14. VESTED RIGHTS.— The right of a person who has located a valid land certificate upon vacant public land, and caused the same to be surveyed, and the survey and certificate returned to the general land office, within the time prescribed by law, is a vested right, and entitled to all the protection given to such right under every constitution of the republic and state.  Sherwood v. Fleming, 25 Tex. Sup., 428, followed, and Hart v. Gibbons, 14 Tex., 215, and Smith v. Taylor, 34 Tex., 607, discussed.

15. SAME.— While a valid location of a land certificate on public land confers a vested right, it is subject to the right of the legislature to prescribe a time within which the owner must perform the remaining acts required by law to the completion of his title, and to annul the imperfect right on non-compliance with the law requiring the performance of such acts.

APPEAL from Harrison.  Tried below before the Hon. A. J. Booty.

Plaintiff Snider sued some two hundred persons in trespass to try title, charging them as joint trespassers on his land.  The suit was filed in Gregg county, but afterwards removed to Harrison.

The two defendants, O. H. Methvin, Sr., and O. H. Methvin, Jr., answered through the same attorney and joined in a plea of not guilty and disclaimer, and each for himself set out by metes and bounds the portion of land to which he laid claim.

The case was called for trial at the June term, 1878, and all of the defendants together urged a general demurrer to the plaintiff's petition, which being sustained, the plaintiff appealed to the supreme court.  There the ruling was reversed and the cause remanded for a new trial.  The plaintiff chose to set out the title under which he claimed in full, and also charged in his petition the illegality of the H. McNutt certificate, file and survey that was first on the land, and under which the defendants claimed, and sought to cancel the patent issued on the McNutt survey.

At the spring term, 1880, the defendants Methvins filed a motion for a severance, and, following this, came similar motions from nearly all of the defendants.

The plaintiff filed afterwards, on the same day, a motion to strike

out the supplementary answer of the Methvins containing their prayer for a severance.

The court allowed the severance, and ordered that the cause as to them be proceeded in as a separate cause from that date, and to this the plaintiff excepted.

The plaintiff, when called upon to announce, declared himself ready to proceed to trial on the whole case and against all the defendants, and declined to announce as to the Methvins alone; whereupon the court stated that unless announcement was made he would dismiss the suit, and the plaintiff, under protest, announced ready for trial as against the Methvins.

The parties then proceeded to trial, and there was a verdict and judgment for the defendants.

It was attempted by the said witness, on part of defendants, to prove that the location and survey by virtue of the Arocha certificate, under which the plaintiff claims, were never, in fact, made by Kearns as the county surveyor, or by his authority, and that he never, at any time, did any official act of or concerning said survey. This evidence was objected to by plaintiff because: First, there was no pleading of defendant authorizing its admission. Second, because there was no plea of accident, fraud or mistake of or concerning said file, location or survey, or of the examination and record of said field notes by Kearns; and because a public officer could not be allowed in this way to attack his official act; and third, because the field notes have been returned to the general land office within the time prescribed by law, and had been thus received by the commissioner and recognized as a valid and genuine survey, and were still so recognized, and the same had never been in any way attacked for fraud or otherwise, and, being an archive, it was conclusive of what it purports to be until attacked and annulled. All of which exceptions were, by the court, overruled.

Other facts sufficiently appear from the opinion.

*James Turner* and *H. McKay*, for appellant.

*Wellborn*, *Leake* and *Henry*, for appellees.

*F. B. Sexton*, also for appellees.

STAYTON, ASSOCIATE JUSTICE.— The record shows that the interest claimed by the appellees in the tract of land sued for was separate and distinct from the lands claimed by the other defendants, and although the defendants had answered jointly at a term prior to that

at which the severance was made, yet we consider it settled by the case of Ballard v. Perry, 28 Tex., 362, after some prior conflict of opinion, that the severance was properly allowed.

The testimony of the witnesses Kearns, Taylor and others, tending to show that neither Kearns nor his deputies received the location of the Arocha certificate, adopted and applied the field notes of the McNutt survey thereto, nor certified the field notes which were filed in the general land office and purporting to be a certified copy of a survey made under the Arocha certificate, was admissible.

If, in fact, the location, application of the field notes of the McNutt survey to the Arocha certificate, recording the same, and certifying of the field notes to the general land office, was the work of some unauthorized person, and not that of Kearns, the surveyor, acting himself or through some lawful deputy, then the papers filed in the general land office were of no validity whatever, and the fact that they may have been filed in the general land office with the knowledge of the commissioner added nothing to their validity.

The appellant averred in his pleadings, in effect, that these things were done before and by Kearns, the surveyor. The plea of "not guilty" put these matters in issue, and any evidence tending to show that the name of Kearns placed to the survey purporting to be certified by him was not placed there by him or by some other person by his consent, or tending to show that no survey was made under the Arocha certificate; that the field notes of the McNutt survey were not adopted by the surveyor nor his deputies, or that no location was made with the surveyor or his deputies, was clearly admissible.

It is unnecessary to consider whether, under the facts of this case, Kearns could legally have adopted the field notes of the McNutt survey, knowing nothing of their correctness, and being unable to determine it.

A patent having issued upon the McNutt certificate, the assignments of error which present questions going only to irregularities, not affecting the intrinsic fairness and legality of the patent, need not be considered.

It sufficiently appears that the person who certified copies of the field notes, made by virtue of the McNutt certificate, was an officer authorized to certify them, and that the officer who issued the duplicate McNutt certificate had power to issue it. There is no affirmative proof that the proper steps were not taken to authorize the duplicate to issue, and all presumptions are in favor of the legality of the act of the officer.

Opinion of the court.

Nor is it necessary, in the view taken of the case, to consider, in this opinion, the rulings of the court below in admitting the testimony of Charles Kearns, and in rejecting the writings offered for the purpose of enabling the jury to determine by comparison whether the signature of Kearns, the surveyor, to the copy of the survey filed in the land office, but in court at the trial, was genuine or not; for if the patent issued by virtue of the McNutt certificate, is valid, it is unimportant whether the proceedings claimed to have been had under the Arocha certificate were real and genuine or not.

Nor do we feel disposed, or think it necessary, to open any question passed upon by this court when the cause was before it at a former term, even if the pleadings would justify it.[1]

There are many assignments of error by the appellant, and many cross assignments by the appellees, raising questions based upon the following material facts:

The appellant claims title to the land in controversy by virtue of the location of a valid land certificate thereon on the 7th of August, 1872. This land certificate was originally issued to Seth Shelton, assignee of Jose M. Arocha, and the appellant claims to own it.

It is not claimed that an actual survey under the location of the Arocha certificate was made, but that the same land upon which it was located had formerly been surveyed under a location made thereon for the Hamilton McNutt certificate, and that the same having become invalid, the surveyor adopted the field notes of the survey made under the McNutt certificate for the Arocha survey, and that the survey so adopted, together with the Arocha certificate, were returned to the general land office within the time prescribed by law.

All of these facts were denied by the appellees, and much evidence not necessary to be here stated was introduced by the respective parties upon the issues thus raised.

The appellees claim title under a patent issued to Hamilton McNutt, deceased, and his heirs, which bears date September 4, 1872. This patent issued under a location made upon the land and a survey thereof, made as early as May, 1838, by virtue of a valid land certificate issued to Hamilton McNutt.

It appears with reasonable certainty that the McNutt survey and certificate were filed in the general land office as early as July 5, 1841, and it is proved that the certificate was taken from the general land office in the year 1853 or 1854 by a person who had no interest

---

[1] Case is reported in 52 Tex., 307.

whatever in it, or right, real or apparent, to control it; the commissioner consenting thereto.

This was done without the consent or knowledge of any person interested in the certificate, and the person who so obtained possession of the certificate kept it in his possession until about August 1, 1876, during which time the owners seem to have had no knowledge of its whereabouts, and in fact, until the latter part of the year 1870 or first of 1871, they seem to have been ignorant that the certificate had been taken from the land office. It appears further that the entire file, consisting of the survey and such other papers as may have belonged thereto, were missed from the land office as early as 1861, but by whom other papers than the certificate were taken from the land office does not appear, nor does it appear that the appellees had any knowledge that such was the case until the same time at which they learned that the certificate had been taken out.

March 20, 1871, a certified copy of the survey was sent to the general land office, and on the 3d September, 1872, a duplicate of the McNutt certificate was issued and filed in that office, and upon the next day the patent issued.

It was claimed on the trial below, as it is here, that the failure of the appellees to return to the general land office the McNutt certificate, within eight months after the passage of the act of 29th November, 1871 (Pasch. Dig., 7097), rendered the McNutt location and survey null and void under that act.

Instructions to that effect were asked by the appellant and refused by the court, and this is assigned as error in a variety of forms.

The court instructed the jury very fully in regard to the facts and acts which must have existed to enable the respective parties to acquire title under the McNutt or Arocha certificates, thus in the main furnishing the jury the proper rules for determining the prior right; after which, however, the court instructed the jury as follows:

" Then you will find for the defendants, unless you believe from the evidence that prior to the 29th day of November, 1871, the said Hamilton McNutt certificate had been withdrawn from the general land office, and not withdrawn for the purpose of the location of the unlocated balance of said certificate; and being so withdrawn prior to the 29th day of November, 1871, was not on file in the land office of the state of Texas on the 29th day of November, 1871, and was not returned to said land office by the 30th day of July, 1872; and that the defendants, to wit, the two Methvins, had knowledge, on or before the 29th day of November, 1871, that said certificate was not on file in the general land office on said day; and that the

Arocha certificate was located on said land on the 7th day of August, 1872, as hereinafter mentioned, and the field notes of said survey examined by Kearns and certified by him to be correct, together with the said Arocha certificate, were returned to and filed in the general land office of the state of Texas within twelve months from the 7th day of August, 1872; which facts, if you believe to be true, you will find for plaintiff. But in this connection you are again instructed that if the field notes of the Arocha survey were never examined, and, in point of fact, certified by David Kearns, as county surveyor of Upshur, to be correct, then the plaintiff can in no event recover."

Upon this charge both parties have assigned error.

The verdict was a general one for the defendants; hence it cannot be told whether the jury found in favor of them upon both issues submitted in the charge, or only upon one. If upon the last matter indicated in the charge quoted, and more fully set out in other parts of the charge, then it was immaterial whether the defendants had title or not. If only upon the first part of the charge, then it becomes necessary to examine the correctness of that part of the charge, and this depends largely upon the true construction of the act of November 29, 1871 (Pasch. Dig., 7096–7098), the several articles and clauses of which will be hereafter set out and considered.

The act in question is not entirely free, if considered by itself alone, from ambiguity, and our duty in the matter is to determine, if we can, what the legislature intended by the language used. In arriving at this intention, however, we may look to the laws then in force, the evil intended to be remedied, and the remedy itself.

The general land office is, and was, the place where all titles to land in this state, and also all the evidences of right to land inferior to a patent or grant, but upon which such perfect title is authorized to issue, are required to be deposited, and the commissioner of that office is made the legal custodian of all such evidences of right as are not required to be given to the interested party for his own convenience and protection.

When a paper, required by law to be filed in that office, is so filed, it cannot be withdrawn unless under some law authorizing it and by a person authorized to withdraw it.

At the time the act in question was passed, the legislature is presumed to have been aware of these facts and to have acted with reference to them; if so, then the legislature must have presumed that every paper once properly filed or " on file " in the general land office was still on file unless legally withdrawn; for the law

required it to be so, and made it the duty of the state's officer so to keep them.

A paper is to be deemed to have been filed in the general land office only when it shall have been delivered into the custody of the commissioner, or some one appointed by him under the law to receive it, to be kept in the proper place for the inspection of parties interested. When so delivered, in contemplation of law, the paper is said to be filed or "on file." Beal *v.* Alexander, 6 Tex., 541; Holman *v.* Chevallier, 14 Tex., 339.

It is shown that the McNutt survey and certificate were "on file" in the general land office, and must be considered, in legal contemplation, as so remaining at the time of the passage of the act unless in a legal sense *withdrawn.*

An examination of the several parts of the act will illustrate the meaning of the word "withdraw" and its derivatives, and of the word "return" as used in the act.

The first section is: "In all cases of the location of lands by virtue of any genuine land certificate, including headrights of the first, second and third class, bounty warrants, scrip and all other valid land certificates, warrants and scrip, the certificate by virtue of which the location and survey is made shall be returned to the general land office with the field notes within the time prescribed by law for returning field notes; and the withdrawal of such certificate from the general land office shall render such location and survey null and void; *provided,* that when a certificate has been located in part and returned to the general land office, the party owning or controlling such certificate may withdraw the same for the purpose of locating the unlocated balance, . . . and such withdrawal shall not in any manner impair the validity of the location." Pasch. Dig., 7096.

The laws in force prior to this act, and bearing upon the return of papers affecting the survey of public lands, were: "The field notes of all surveys made previous to the passage of this act shall be made out and returned in the manner now required by law, to the general land office, on or before the 31st day of August, 1853, or they shall become null and void, and the said survey shall become vacant land, and be subject to be relocated and surveyed, as in other cases, by any person holding a genuine land certificate, or other legal evidence of claim to land." Pasch. Dig., 4562.

"The field notes of all surveys hereafter made shall be returned to and filed in the general land office within [twelve months] from the date of survey," etc. Pasch. Dig., 4566.

Neither of the statutes last cited expressly made it necessary to file with the survey the certificate under which it was made, within twelve months.   House v. Talbot, 51 Tex., 467.   The act in question made a change in this respect, and required, as no former law expressly did, that the certificate or other evidence of right to land should be returned with the survey.

The word "return," as used in all these statutes, evidently means the transmission to and deposit in the general land office with intent that it shall there remain; and not a retransmission and redeposit after the certificate or survey has once been deposited in the general land office and afterwards "withdrawn."

The "withdrawal" contemplated by the section of the act under consideration is evidently not an unlawful or unauthorized one, made by some person having no interest, right or authority, but one which the owner may lawfully make; he thereby, except in the cases in which it was expressly permitted, consenting that by his act the location and survey which he had made shall become null.

The "withdrawal" must be understood to be the act of the owner, and not the wrongful act of some other person; for, certainly, the theft or other unauthorized taking of the certificate from the general land office would not have the effect of rendering null a valid location and survey, and especially so in a contest between the owner of the survey and certificate, and another person seeking to appropriate the land by a subsequent location, he having knowledge of the continued claim of the prior locator.

The first clause of the next article, which is the one relied upon by the appellant for the invalidation of the McNutt survey, is: "In all locations of land heretofore made by virtue of any such certificate as is specified in the first section of this act, and in which the field notes have been returned to the general land office, and the certificate by virtue of which the survey was made is not on file in the general land office, nor has been withdrawn for location of unlocated balance, as is provided in the first section of this act, such certificate shall be returned to and filed in the general land office within eight months from the passage of this act, or the location and survey made by virtue thereof shall be null and void." Pasch. Dig., 7097.

This part of the section applies to cases in which surveys had been made and "returned" to the general land office prior to the passage of the act, but does not apply expressly to cases in which the certificate upon which the survey was made had also been "re-

turned " to the general land office prior to its passage. The act is not clearly worded.

It may thus be more accurately expressed: "In all locations and surveys of land heretofore made, by virtue of any such certificate as is specified in the first section of this act, of which field notes have been returned to the general land office, if the certificate by virtue of which the survey was made is not on file in the general land office, unless it has been withdrawn for location of unlocated balance, as is provided in the first section of this act, such certificate shall be returned to and filed in the general land office within eight months from the passage of this act, or the location and survey made by virtue thereof shall be null and void."

Within the meaning of the act the certificate was not on file if it had not been delivered to the commissioner of the general land office, or some other proper person, there to be deposited and kept as an archive of the office, at the time or prior to the passage of the act.

If it had been so delivered to the proper officer it was " on file " in legal contemplation, unless withdrawn by the owner or some other person acting under his authority.

If withdrawn by the owner, or with his consent, the certificate was not " on file," no matter for what purpose the withdrawal was made; if made, however, for the purpose of locating an unlocated balance of the certificate, the withdrawal operated no forfeiture of the location and survey in case the certificate was not redeposited within eight months after the passage of the act.

If, however, the withdrawal by the owner was for any other purpose than that designated by the act, the act would impose upon him the duty of redepositing the certificate in the general land office within the time prescribed, or otherwise his location and survey be null; and this for the simple reason that, by his act, the certificate was not "on file " at the time the act was passed.

The words " withdrawn " and " return " are used in the same sense in the part of the section now under consideration as in the preceding section; and, in so far as the word " return " applies to the certificate, it necessarily means its first transmission to, and deposit in, the general land office, unless it be in a case in which the owner had so withdrawn a certificate once on file as to deprive it of the character of a filed paper.

Such being true, the statute can have no application to a case in which the certificate, upon which a survey was made, had once been properly deposited, prior to the passage of the act in question, unless,

subsequently to the deposit, and prior to the passage of the act, the owner or controller of the certificate had withdrawn it.

The law presumes that the commissioner of the general land office did his duty in reference to the continued custody of a land certificate or other paper of which the law makes him the custodian, when it is once properly in his charge; that it was on file, for it could not legally be otherwise, unless by the act of the owner or his agent. Legislation upon such a question must be considered in the light of every presumption which the law indulges as to facts.

The remaining part of this section applies to still another state of facts — to cases in which field notes of surveys made before the act was passed had never been returned to the general land office; and it declares that they shall be returned within the time prescribed, and that they shall be accompanied by the certificate upon which the survey was made. The word "return" as here used signifies the act of delivering in the first instance into the land office, there to be kept by the proper officer.

As before said, former laws did not expressly require this, and the inference is that neglect in this, which was certainly the proper course, had become too frequent, and that it was the intention of the act to put an end to such a practice, and to make it essential to the validity of a location and survey, that both the certificate and survey should be returned together, that complete evidence might there at all times exist of the right of some one to the particular land.

The succeeding article is: "In all cases when the field notes of surveys of land heretofore made have been from any cause withdrawn from the general land office, the same shall be returned to said office within twelve months after the passage of this act, or such survey or surveys shall be null and void. And in all cases when field notes shall hereafter be withdrawn from the general land office, the same shall be returned thereto within twelve months from the date of withdrawal, or such survey or surveys shall be null and void." Pasch. Dig., 7098.

This section applies to cases in which field notes, prior to the passage of the act, had been returned, but for some reason withdrawn, and also to cases in which field notes may be withdrawn after the passage of the act. The word "withdrawn" is here used in the same sense as in the preceding articles and evidently refers to the act of the owner or some one acting under his authority.

The word "return," however, is used in a sense different to that in which it is used in the preceding sections, as is evidenced by the

fact that the language expressly applies to field notes which have once been properly deposited, but for some reason have been subsequently withdrawn.

The fact that similar language, language showing clearly that it applies to certificates which had once been properly deposited in the general land office, is not used in the section upon which the appellant bases his right, as it is in the section last quoted, in reference to field notes which have once been so deposited, is strong evidence of the fact that the section in question was intended only to reach such cases as those in which the field notes had been filed by the owner prior to the passage of the act, without the certificate upon which the survey was made accompanying them. The spirit of the act would also cover the case in which the certificate had been filed and then withdrawn by the owner prior to the act.

As to field notes, the penalty is to be imposed for failing to return, or for withdrawing and not redepositing within the time prescribed; in reference to certificates, the natural and reasonable construction of the act will only apply the penalty for failure to comply in the same respects, unless it be in case of a certificate withdrawn in violation of the provisions of the first section of the act.

The primary meaning of the word "withdraw" carries with it the idea that the act from which it results is the act of some person who has formerly possessed, who made the deposit, who owns or controls.

Of the word, Mr. Richardson says: "But to withdraw, e. g., implies a putting forth or forward, and then a drawing back from one person or thing to another; and considered in relation to that *from* which [is drawn] it denotes privation; but considered in relation to that *to* which [is drawn] it denotes reunion; agreeably to the meaning of the word with." "To draw back or away; to take back or away; to resume." Mr. Webster gives to the word substantially the same meaning.

If the legislature had intended to embrace a wrongful and unauthorized taking from the general land office, a taking wrongful to the owner and unauthorized by him, some appropriate words would certainly have been used to express such intention.

If the owners of certificates filed with their surveys prior to the act knew that they had been taken from the general land office illegally and without permission from them, it would have been proper for them to have supplied duplicates at the earliest period after knowledge of the loss; but even their failure to do this would

not subject them to the penalty imposed by the statute, unless they directly or indirectly aided in some way in such illegal taking.

If, with such knowledge, they took no steps to place in the general land office proper evidence of their continued claim, their negligence might enable others to acquire rights by location which the law would protect; but no one with knowledge of the continued claim of such persons could acquire such rights. That the agent who made the location of the Arocha certificate had notice of the continued claim of appellees and others to the McNutt survey, the record before us makes manifest. This was notice to the appellant. A certified copy of the McNutt survey was filed within the time prescribed by the statute, and no question arises as to what would have been the effect if this had not been done.

If we felt compelled to construe the statute as the appellant contends it should be, we would have great difficulty in yielding our assent to the proposition that such legislation was in harmony with the constitutional limitations placed on the power of the legislature.

The right of a person who has located a valid land certificate upon vacant public land and caused the same to be surveyed, and the survey and certificate returned to the general land office within the time prescribed by law, is a vested right, and entitled to all the protection given to such right by the guaranties contained in every constitution we have had since the adoption of that of the republic.

This question we deem settled in the case of Sherwood v. Fleming, 25 Tex. Sup., 428, in which Wheeler, C. J., reviews the cases which had been thought to announce a contrary doctrine, prominent among which, and often cited, is the case of Hart v. Gibbons, 14 Tex., 215. The case of Smith v. Taylor, 34 Tex., 607, seems to intimate a contrary opinion, but that case called for no decision upon the question, and it does not seem to have been considered, although there are some expressions in the opinion favoring the view that the state has absolute control of public lands until it is parted with by the issuance of a patent.

That the legislature may prescribe a time within which a person must perform acts necessary to the vestiture of title to land is certainly true; and that in case of failure to comply with such a requirement, imperfect rights, such rights as could be made perfect only by compliance, may be annulled by legislation declaring the utmost limit of time which shall be given to perform such acts.

Instances of the exercise of such power by the legislature is seen in those acts requiring surveys already made to be returned within a

given time or the surveys to become null and void, and in acts prescribing the period within which land certificates of the various classes should be presented to the several boards and tribunals created to determine the validity and genuineness of such claims.

Instances are found in the constitution of 1870 and also in the present, in those sections which required all land certificates issued before the adoption of these constitutions to be located, surveyed and returned to the general land office within a given time or be forever barred. Such action, through a constitutional convention, illustrates the sentiment of the age as to the legality of such legislation, but could not be looked to as the measure of the power of a legislature, unless in a case in which the matter was controlled by some provision in the constitution of the United States binding alike upon a constitutional convention and the people of a state as upon a legislature. Of the power of the legislature in such cases we have no doubt.

It may be said to be true, as a general rule, that where a law which creates, provides for, and upon which depends, a right, couples with the right, in the nature of things, or by express terms, a requirement that certain acts shall be done to make the right complete, then the legislature may prescribe a time within which such acts must be done, or the incipient claim become null and of no effect.

In all such cases, however, the imperfect right is lost through the failure of the person who claims, and seeks to assert it, to do what he knew he must do, and without which the law promised nothing. That the law may be passed after the imperfect right has an existence does not make it objectionable.

If it be said that the act in question gave to the parties reasonable time within which to have the McNutt certificate redeposited in the general land office, and that they ought to have done so, to this we reply, the owners of that certificate had done everything which the law required them to do to vest in them the right to that particular land; what remained to be done, except to pay for the patent when it issued, was for the state through its officers to do; it undertook to complete the title, which was wanting in nothing but the ministerial act of issuing the patent; it undertook to securely keep in its custody all of their evidences of right, to enable it to perform this duty.

It would be a monstrous doctrine to hold, under such facts, that without any notice to the owner that his evidence of right had been unlawfully taken from the possession of the officer of the govern-

ment to whom it had compelled him to deliver it, he could be deprived of his right. Legislation which led to such results would be a snare, and, in the absence of constitutional restraints, a gross abuse of arbitrary power. Such would be the effect of the act if construed as the appellant claims it should be.

If the construction claimed for the statute were the true one, and the word "return," which must mean a redeposit, if the certificate had once been filed, is to be literally applied, then the law in this case, and in many others which will readily suggest themselves, would require an act to be done in its nature impracticable, if not impossible. The certificate was not in the possession of those claiming rights under it; they knew not where it was and had no reasonable means of ascertaining; had the right to presume that it was in the custody of the proper officer, and knew of no fact to lead them to believe to the contrary until a short time before the law was passed; nor had they any grounds even to suspect that the certificate was in the hands of the person who actually had it. Under such circumstances, to have returned the certificate within the time prescribed would have been impracticable. The act, literally construed, would not have been satisfied by a duplicate. It is not to be presumed that the legislature ever contemplated such results or intended them.

We are of the opinion, for the reasons given, that the patent under the McNutt certificate is valid, and that it relates to the original location of the certificate in the year 1838, and the judgment of the court below must be and is in all things affirmed.

                                                        AFFIRMED.

[Opinion delivered December 11, 1883.]