PATE et al. v. McLAIN et al.†

(Court of Civil Appeals of Texas. March 16, 1911. Rehearing Denied April 20, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 137*)—SALE OF INTEREST IN LAND—POWER OF ADMINISTRATRIX—LAND CERTIFICATE.

A headright certificate having been transferred to S. in November, 1840, was duly located in December of that year on two surveys, the field notes and plats of which were duly returned and filed in the General Land Office. The original certificate, though fully located, was not filed in the Land Office with the field notes and plats, but the location was recognized by the Land Office and parties until August 2, 1872, when the Land Commissioner, acting under authority conferred by Act 1871 (Acts 12th Leg. [2d Sess.] c. 57), declared the surveys under the certificate forfeited because the certificate had not been so returned. S. having died, his widow as his administratrix without an order of court conveyed by deed to W., defendant's prior grantor, "one league and labor land certificate [describing the original certificate] for one league and labor of land" and "all and singular the lands located by virtue of the same." After canceling the original surveys, a duplicate certificate was issued "in lieu of the original lost" on July 30, 1872, which was located on other land in controversy, and which was conveyed by regular chain of title from the widow's grantee to defendants. Held, that since the original location was not void under the act of 1871, having been made before such act took effect, because the certificate was not returned with the field notes, the certificate was merged in the location, and, being therefore subject to transfer only as real estate, the conveyance by the widow without an order of court did not pass the title of the estate in the land in controversy.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 557–559; Dec. Dig. § 137.*]

2. EXECUTORS AND ADMINISTRATORS (§ 129*)—REAL ESTATE—AUTHORITY OF ADMINISTRATRIX.

Where intestate died seised of a right to certain public land located under a headright certificate, his administratrix could not abandon or forfeit any right of the estate in the location and surveys without express authority so to do from the probate court.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 533–536; Dec. Dig. § 129.*]

3. EXECUTORS AND ADMINISTRATORS (§ 145*)—DEED OF EXECUTRIX—EXCESS OF AUTHORITY—EFFECT OF CONVEYANCE.

Where a widow was joint owner with the estate of her deceased husband of which she was executrix of certain land located under a headright certificate, and executed a deed conveying the certificate and all rights thereunder as "wife, widow and administratrix," the fact that the deed was invalid for want of authority of the probate court to convey, in so far as the estate's interest was concerned, did not invali-

date it as a conveyance of the widow's undivided one-half interest in the property.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 585–587; Dec. Dig. § 145.*]

Appeal from District Court, Panola County; W. C. Buford, Judge.

Trespass to try title by Julia A. McLain and others against Alphonso Pate and others. Judgment for plaintiffs, and defendants appeal. Modified and affirmed.

See, also, 124 S. W. 718.

The action was in trespass to try title to the M. Carpenter survey, in Panola county, Tex., patented in 1896. The controversy between the parties involved the ownership of the certificate under which the land was located and patented. A valid land certificate to one league and labor of land was duly issued by the land board of San Augustine to M. Carpenter on January 10, 1838. This certificate, before location, was duly transferred by M. Carpenter to W. N. Sigler on November 14, 1840. It was agreed that the certificate was community property of W. N. Sigler and his wife, Julia A. Sigler. W. N. Sigler died in 1853, and his wife died in 1877, each intestate. In 1854 Julia A. Sigler was appointed and qualified as administratrix of the estate of her deceased husband. On April 23, 1872, Julia A. Sigler, as "wife, widow, and administratrix of W. N. Sigler, deceased," executed a conveyance to J. K. Williams of "one league and labor land certificate, the headright of M. Carpenter, No. 60 class No. 1, issued by the board of land commissioners for San Augustine county for one league and labor of land, and conveyed by M. Carpenter to my said husband W. N. Sigler, with all and singular the lands located by virtue of the same." No order of the probate court was made authorizing the sale and conveyance. The certificate was not inventoried as a part of the estate. The appellants are the heirs of W. N. and Julia A. Sigler, and claim the land in suit as such. The appellees claim through regular conveyances from J. K. Williams down to themselves.

The findings of fact made by the court show that after the sale and transfer on November 14, 1840, of the certificate by M. Carpenter to W. N. Sigler, it was duly located in December, 1840, upon two surveys of land subject to appropriation in San Augustine county and sufficient to appropriate all of the certificate, and the field notes and plats of the two surveys were duly returned to and recognized by and filed in the General Land Office at Austin. The field notes were duly entered in the surveyor's record of San Augustine county, and were legally made. A map of San Augustine county, dated June, 1863, in the archives of the Land Office, shows these plats

of land surveys. The original certificate was not filed in the Land Office with the field notes and plats. The location, field notes, and surveys were recognized by the Land Office and parties until August 2, 1872. On this last date the Land Commissioner, acting under the act of 1871 (Acts 12th Leg. c. 57), declared the two surveys made under said certificate forfeited for the reason that the certificate had not been returned to the Land Office. After the cancellation of the two surveys by the Land Commissioner, and on a duplicate certificate, the land in suit was located thereunder in Panola county and patented. The duplicate certificate issued by the Land Commissioner on July 30, 1872, re-cited that it was issued "in lieu of the orig-inal lost." Upon the facts the court made the conclusions of law: (1) "That the loca-tions and surveys and return of the field notes to the General Land Office on the two surveys made in December, 1840, did not merge the certificate into the realty, because the certificate was not returned to the Gen-eral Land Office with the field notes, and therefore the certificate still remained per-sonal property, and was personal property at the date of the sale of the certificate from Julia A. Sigler to J. K. Williams;" and (2) that Julia A. Sigler as administratrix of the estate of W. N. Sigler had full authority to sell the certificate to J. K. Williams, and that her sale transferred the title to the certificate to J. K. Williams.

The trial was to the court, and judgment for the plaintiffs.

H. N. Nelson and M. E. Richardson, for appellants. R. W. Priest, for appellees.

LEVY, J. (after stating the facts as above). [1] Under proper assignments of error, the appellants challenge the conclusion of law made by the court that Julia A. Sigler had full authority as administratrix to make the sale and conveyance of April 23, 1872, to J. K. Williams, and that her sale passed title to the land in suit, because the certificate was personalty. A clearer understanding of the points involved in the appeal is had by a brief statement. Appellants, who were really defendants in the suit, claim title to the land in issue as heirs of W. N. and Julia A. Sigler. The appellees, who were plaintiffs below, claim title under a chain of transfers from J. K. Williams. J. K. Williams' claim for title is deraigned through the convey-ance of April 23, 1872, made by Julia A. Sig-ler as administratrix of the estate of W. N. Sigler, deceased. The sole controversy is one of law as to whether in the record the power and authority existed in the adminis-tratrix as such to make the sale and deed to J. K. Williams. If such power is shown to have existed, then the judgment awarding appellees all the land in suit is admittedly correct. The deed referred to by its terms conveyed "one league and labor land certifi-cate issued to M. Carpenter for "one league and labor of land" and "all and singular the lands located by virtue of the same." At the time of this sale and deed, it appears that the certificate was located upon two surveys in San Augustine county. It is not shown in the record that any order of the probate court was made or had authorizing the administratrix to make the sale and deed, and there is sufficient evidence to show that the sale and deed were made without any order of the probate court authorizing the same. The contention of the appel-lants, in effect, is that it was incumbent on the appellees, claiming to deraign title through the deed of an administratrix, in order to show a valid sale and deed, to make proof that the administratrix had authority of the probate court to make the sale and deed. The appellees contend that the deed only transferred the certificate, and under the facts the certificate at the time was a chattel, and that under the probate laws of 1870 (Acts 12th Leg. c. 81, §§ 161–167), in force at the time of the sale, an adminis-tratrix had authority to sell personalty of the estate without an order of the probate court. In the former appeal of this case (124 S. W. 718) the certificate was treated as personalty, because in that record there was no evidence that it had ever been lo-cated, and we ruled that under the probate laws of 1870 it was not required that an order of court be obtained to authorize the administratrix to sell personalty. The pres-ent record, however, is entirely different in respect to the location of the certificate. As seen, the parties each stand and rely on own-ership of the certificate, and such ownership is made the basis for title to the land in suit. And, as the point on appeal is pre-sented, the power and authority of the ad-ministratrix to make the sale and deed in suit are made dependent on whether such sale should be controlled by the probate laws of sale of realty or personalty. And this de-termination makes it material to decide whether the certificate under the facts at the time of the sale and deed in evidence constituted property of the character as be-tween the parties of chattel real or person-alty. If a chattel real, then admittedly in the record the administratrix acted without any authority in making the sale and deed.

This brings us to the determination of whether the court's conclusion of law, chal-lenged by appellants, was correct, that the certificate under the facts was personalty. The court finds as a fact that the certificate was located in December, 1840, upon two surveys of land subject to appropriation in San Augustine county, and sufficient to ap-propriate all of the certificate. The field notes and plats of the two surveys were duly returned to and recognized by and filed in the General Land Office, and were duly en-tered in the records of the surveyor of San

Augustine county, and legally made. The location, field notes, and surveys were recognized by the Land Office and the parties until August 2, 1872. The original certificate was never returned to the Land Office and filed with the field notes. On August 2, 1872, the Land Commissioner, acting under the act of 1871, declared the two surveys made under the certificate forfeited for the reason that the certificate had not been returned to the Land Office. On July 30, 1872, the Land Commissioner issued a duplicate certificate reciting that it was issued "in lieu of the original lost." After the forfeiture of the two surveys, this certificate was floated and located upon the land in suit. Upon these facts the court concluded as a matter of law "that the location and surveys and return of the field notes to the General Land Office on the two surveys made in December, 1840, did not merge the certificate in realty, because the certificate was not returned to the General Land Office with the field notes, and therefore the certificate still remained personal property." From the facts it appears as a fact that the location and surveys and field notes made remained and were recognized by the Land Office and the parties from 1840 to August 2, 1872. And by this it is understood that the court did not base his conclusion of law that the certificate was personalty upon any presumption or inference that there had been an abandonment in fact at any time by the parties of the location and surveys because of the failure to return the certificate. The parties to the suit stand on and rely on the forfeiture of the two former surveys by the Land Commissioner, and the subsequent floating of the certificate, as authorizing the location and patent of the Panola county land in suit. Therefore, as between the parties, and as between the parties and the state, it is to be taken as a fact that the original location and survey in San Augustine county had not been abandoned at the time of the sale, and not until August 2, 1872, when the Land Commissioner, acting under the act of 1871, forfeited the surveys. And by reference to the deed in suit it clearly appears by its terms that the parties were dealing with respect to rights existing under the location and survey then had, and that it was their intention to pass and acquire all such rights. The deed by its terms undertakes to convey not only the certificate, but "all and singular the lands located by virtue of the same." In Curdy v. Stafford, 88 Tex. 120, 30 S. W. 551, the terms of the deed only mentioned the certificates as conveyed, and it was held that a conveyance "of a land certificate which is located conveys the land upon which the location is made." Also Hearne v. Gillett, 62 Tex. 23. Therefore, if this were a suit between the parties for that particular land, could it be successfully asserted that such conveyance,

if power existed in the administratrix to execute it, did not pass title to the land to Williams? So by the facts that the certificate was actually located and the surveys thereunder not abandoned or forfeited at the time of the deed the terms of the deed would be controlling that the parties by express intention and legally were conveying an interest in realty. It was said in Simpson v. Chapman, 45 Tex. 560: "The certificate until located, as often said by this court, is personalty. But, when it is located, it loses this character. It then attaches with the land and becomes a chattel real, and can be assigned and transferred by parol no more than the land itself. Instead of being property of itself, it is, like a deed, the evidence of the title to the land upon which it is located. And though its sale or assignment subsequent to location, if in writing, but not otherwise, may in equity be held to operate as a transfer of the land, it is the land, and not the certificate, which is the thing sold. The right to the certificate is an incident to and necessarily accompanies a transfer of the land." What is there said is approved in Lewis v. Johnson, 68 Tex. 448, 4 S. W. 644; Adams v. Railway Co., 70 Tex. 252, 7 S. W. 729; Thompson v. Langdon, 87 Tex. 254, 28 S. W. 931. The case of Adams v. Railway Co., supra, appears to rule that if location and survey by virtue of a genuine land certificate be properly made on sufficient land subject to appropriation, and the survey with the certificate be returned to the General Land Office, the owner of the certificate cannot then abandon the location, and thus acquire rights to have other land located by virtue of it. And that ruling is approved in Land Co. v. Thompson, 83 Tex. 169, 17 S. W. 920. There, of course, the certificate was returned with the field notes, but the ruling declares the fixed status of the location and survey when all the requirements of law are complied with. So, as seen, if this location and survey were so far valid as that the owner of the certificate could not himself abandon the location and acquire rights to have other land located by virtue of it, then the certificate became so far merged in the realty as to constitute it a chattel real, and a conveyance, to be valid, must conform to the law governing conveyances of real estate.

[2] Undoubtedly the administratrix as such could not have abandoned and forfeited any right of the estate in the location and surveys without express authority of the probate court to do so. The effect of the court's conclusion, as challenged, is that the failure to return the certificate to the Land Office operated to render the location void and of no effect ab initio, and, in consequence of being a void location, the certificate remained in the legal status of never having been located, and therefore a chattel personal. For the actual location and surveys here to

be held void ab initio it would depend upon whether the laws in force prior to the act of 1871 made it so for failure to return the certificate to the Land Office with the field notes. It was pointedly held. in Snider v. Methvin, 60 Tex. 487, that no former law, before the act of 1871, expressly made it necessary to return and file with the survey. the certificate under which it was made. And in House v. Talbot, 51 Tex. 462, there was the same ruling, and in this language: "However desirable that the practice should have been to have required that the certificate, when appropriated in full by the location, should have been returned with the field notes of the survey to the General Land Office, yet we are not prepared to say that the failure to do this would have forfeited a location valid in other respects." This ruling was upheld in Keith v. Guedry, 122 · S. W. 17. There the survey was forfeited by the Land Commissioner under the act of 1871 for failure to return the certificate, and it was contended that the act was unconstitutional, as retroactive. It was ruled that it did not impair the rights of the grantee to the certificate, or the right to acquire lands by locating it, but merely provided conditions on which title to land located on may be completed, with forfeiture of the imperfect rights in default of compliance with the conditions. The force of these authorities is, as seen, that prior to the act of 1871 the failure to return the certificate with the field notes did not forfeit a location valid in other respects. This manifestly rules the point presented. So, as it is the settled rule of law that the certificate which is located is so far merged in the realty as to constitute it a chattel real, and its sale operates to pass the realty, then it logically follows that in order for the sale and deed of an administrator to such certificate, as well as the land located under it, to be held valid, authority from the probate court for such sale and deed as required by the probate law for the sale of realty should be had and shown. It does not follow, however, from the present ruling, that because appellees have failed to show any power and authority in the administratrix to make the conveyance to Williams under which they claim the certificate and the land then located under it that they have failed to show title to any part of the land now sued for.

[3] Mrs. Julia A. Sigler was not only administratrix, but joint owner as well. And although she, acting in her fiduciary capacity, exceeded legal authority in making the conveyance, her conveyance would nevertheless invest her grantee with such interest as she owned in her individual right. Corzine v. Williams, 85 Tex. 499, 22 S. W. 399; Parks v. Knox, 130 S. W. 203. She undertook to make the conveyance as "wife, widow and administratrix of the estate of my husband W. N. Sigler deceased." By undertaking to convey as "wife and widow," as well as "administratrix," her intention appears to pass her individual interest as well as the interest of the estate. It follows, therefore, that appellants are entitled to recover one-half of the land and the appellees one-half.

The judgment of the district court is therefore modified so that appellants recover a one-half undivided interest in the lands described in the judgment, and appellees recover a one-half undivided interest in the same, the appellees to pay costs of this appeal, and appellants all costs of the district court. The judgment against appellant Pate. is modified to allow a recovery in favor of appellees for $130 and interest. The judgment in favor of Hutto, not being appealed from, will remain undisturbed.

Modified and affirmed.