### J. F. KEITH ET AL. v. GUSTAN GUEDRY.

No. 1976.   Decided November 10, 1909, February 16, 1910.

**1.—Location—Return of Field Notes—Forfeiture.**

One who claims forfeiture of another's location and survey upon the ground that it was made upon a conditional certificate and that the unconditional certificate was not returned and filed in the Land Office in accordance with the Act of August 30, 1856, has the burden of proving the facts necessary to establish such forfeiture; and where the evidence shows that the survey was made upon a certificate not now found on file in the Land Office, but formerly on file there, and fails to establish whether same was the conditional or the unconditional certificate, the facts necessary to establish such forfeiture are not shown. (P. 166).

**2.—Location—Return of Certificates—Forfeiture—Constitutional Law.**

The Act of November 29, 1871, making void locations and surveys on failure to return to the Land Office the certificate, not there on file, by virtue of which the survey was made, was not unconstitutional as impairing a vested right of the locator. The law did not destroy the right to acquire land by locating the certificate, nor destroy the right acquired by the location, nor impair the legal effect of the contract between the State and the citizen. (Pp. 166–168).

**3.—Same.**

The right secured to the owner of a land certificate by his location and survey was an imperfect title to the land, to be perfected in the manner and time prescribed or which should thereafter be prescribed by law; and it is competent for the Legislature to prescribe that the locator should present to the Land Office his certificate, if it was not found on file, and to declare a forfeiture of the survey on his failure to comply with such terms. (P. 166).

**4.—Same—Burden of Proof—Patent.**

Where patent to land has been issued by the State, the burden is upon one claiming title under an unpatented survey and location of a certificate upon the same land to show that his certificate, if not already on file, was returned to and deposited in the Land Office in accordance with and within the time required by the Act of November 29, 1871. (P. 168).

Error to the Court of Civil Appeals for the Fourth District in an appeal from Hardin County.

J. F. Keith and another sued Guedry in trespass to try title and defendant had judgment. Plaintiffs appealed and on affirmance obtained writ of error.

*Geo. D. Anderson* and *Andrews, Ball & Streetman,* for plaintiff in error.—Where plaintiffs in trespass to try title introduce in evidence a patent from the State of Texas, valid upon its face, and proof showing that they connect with and hold under such patent, they make out a prima facie case entitling them to recover, and the burden is upon the defendant, claiming under a prior but unpatented survey, to clearly establish a superior equitable right in order to defeat such recovery. Johnson v. Eldridge, 49 Texas, 507, 520, 521; Atkinson v. Ward, 61 Texas, 383, 385; McWhirter v. Allen, 1 Texas Civ. App., 649; Sheppard v. Avery, 28 Texas Civ. App., 480; Crow v. Reed, 25 Texas Supp., 392.

Where a conditional headright certificate was issued on July 4, 1839, for 640 acres of land and survey was made by virtue thereof on April 30, 1856, and the field notes were filed in the General Land Office on July 14, 1856, but the unconditional certificate which had been issued on November 3, 1845, was not returned to, nor filed in the General Land Office on or before August 1, 1857, the location and survey became null and void, and the land was public domain and subject to be located upon as other vacant land. Const., Rep. of Texas, sec. 10, par. 5; Const. 1845, art. 12; Act of Aug. 30, 1856, Laws of Texas, vol. 4, p. 499, Pasch. Dig., art. 4210; Act of 1837, Laws of Texas, vol. 1, pp. 1404-1418; Act of Jan. 4, 1839, Laws of Texas, vol. 2, p. 35, Pasch. Dig., art. 4167; Act of Jan. 29, 1840, Laws of Texas, vol. 2, pp. 313-316; Act of Jan. 15, 1841, Laws of Texas, vol. 2, pp. 594-597; Sec. 1 of Act of May 12, 1846, Laws of

Texas, vol. 2, p. 1516; Act of Aug. 1, 1856, Laws of Texas, vol. 4, pp. 433, 434; Snider v. Methvin, 60 Texas, 487, 499, 500; Snider v. International & G. N. R. Co., 52 Texas, 306, 314; Warren v. Shuman, 5 Texas, 441, 450-453; Lewis v. Mixon, 11 Texas, 564; Hart v. Gibbons, 14 Texas, 214; Hughes v. Lane, 6 Texas, 289, 291, 293; Peck v. Moody, 23 Texas, 93; Durrett v. Crosby, 28 Texas, 688; 695; Whitehead v. Foley, 28 Texas, 268, 273, 274, 285; Holloway v. Holloway, 30 Texas, 164, 167; Frederick v. Hamilton, 38 Texas, 322, 336, 342; Hosner v. DeYoung, 1 Texas, 764; Jones v. Menard, 1 Texas, 770; League v. DeYoung, 2 Texas, 497; New York & T. L. Co. v. Thomson, 83 Texas, 169-188; Sheppard v. Avery, 28 Texas Civ. App., 480; Jones v. Lee, 86 Texas, 34; Peacock v. Hammond, 6 Texas, 544; Lewis v. Durst, 10 Texas, 398; Act of June 14, 1840, Laws of Texas, vol. 2, p. 242; Duren v. Houston & T. C. Ry. Co., 86 Texas, 287, 290.

Under section 1 of the Act of May 12, 1846, (Laws of Texas, vol. 2, p. 1515, Pasch. Dig., art. 4309) passed ten years before the John P. Wilds survey was made, the conditional certificate was required to be filed in the General Land Office before patent could issue, and the Legislature had authority to pass the Act of November 29, 1871, to prescribe a time within which such certificate should be filed in the General Land Office, and in case of failure to comply with such requirement, to annul the survey; and said Act was valid, and by virtue of same the John P. Wilds survey became forfeited. Sec. 2 of Act of November 29, 1871, Laws of Texas, vol. 7, pp. 47, 48, Pasch. Dig., art. 7097; Sec. 1 of Act of May 12, 1846, Laws of Texas, vol. 2, p. 1516; Pasch. Dig., art. 4309; Snider v. Methvin, 60 Texas, 487, 499, 500; Von Rosenberg v. Cuellar, 80 Texas, 249, 260; Haney v. Atwood, 42 Texas Civ. App., 270; Atkinson v. Ward, 61 Texas, 383; Johnson v. Eldridge 49 Texas, 507, 522; Seibert v. Richardson, 86 Texas, 295-297; Peacock v. Hammond, 6 Texas, 544; Lewis v. Durst, 10 Texas, 398; Duren v. Houston & T. C. Ry. Co., 86 Texas, 287; Act of June 14, 1840.

Where a location and survey became null and void for failure to return to or file in the General Land Office the certificate by virtue of which such location and survey was made, the land thereupon became vacant and unappropriated public domain, and was not land titled nor equitably owned under color of title from the sovereignty of the State, but was subject to be located, surveyed and patented by virtue of any other genuine land certificate. Sec. 2, art. 14, Constitution of 1876, Sayles' Constitution, p. 573; Atkinson v. Ward, 61 Texas, 383; De la Garza v. Cassin, 72 Texas, 440, 442; Winsor v. O'Connor, 69 Texas, 571, 579; Adams v. Houston & T. C. R. Co., 70 Texas, 252, 268; Gunter v. Meade, 78 Texas, 634; Paston v. Blanks, 77 Texas, 330, 332; New York & T. L. Co. v. Thomson, 83 Texas, 169, 188; Faulk v. Sanderson, 89 Texas, 692; Howell v. Hanrick, 88 Texas, 383, 412; Seibert v. Richardson, 86 Texas, 295; Snider v. International & G. N., 52 Texas, 306, 321-324; McLeary v. Dawson, 87 Texas, 524, 538, 539; Hanrick v. Dodd, 62 Texas, 75, 91; Musselman v. Strohl, 83 Texas, 473, 481; Yochum v. McCurdy, 39 S. W., 210.

Where a survey became forfeited either under the Act of August 30, 1856, or the Act of November 29, 1871, for failure to file the certificate in the General Land Office, and thereafter the land was located and surveyed by virtue of another certificate on March 30, 1881, and patent was issued upon the latter survey on July 2, 1886, it will be presumed that notice of the forfeiture was given by the Commissioner of the General Land Office to the party interested as soon as such forfeiture was discovered, if any such notice was necessary. Art. 3812, Rev. Stats. of 1879; Act of Feb. 29, 1881, Laws of Texas, vol. 9, p. 98; Atkinson v. Ward, 61 Texas, 383, 388; De la Garza v. Cassin, 72 Texas, 440, 444; Howard v. Perry, 7 Texas, 267; Peacock v. Hammond, 6 Texas, 544; Shepard v. Avery, 89 Texas, 307; Faulk v. Sanderson, 89 Texas, 692; Waterhouse v. Corbett, 43 Texas Civ. App., 512; Groesbeck v. Harris, 82 Texas, 412.

*Greers & Nall* and *J. W. Lockett,* for defendant in error.—Wilds obtained his unconditional headright certificate No. 46, on November 3, 1845, and had this particular 640 acres surveyed, by virtue of his headright certificate, on April 30, 1856, and the field notes, after being recorded in the surveyor's office, were filed in the General Land Office on July 14, 1856, and he complied with all of the requirements of law, whereby this 640 acres became segregated from the public domain and vested absolutely in Wilds, whether his headright certificate was ever filed in the General Land Office or not, and whether any patent was ever issued to him or not, and the appellee Guedry, is connected with Wilds by a regular chain of title. Act of Jan. 4, 1839, p. 35, vol. 2, p. 35, Gammel's Laws of Texas; Act of Jan. 29, 1840, p. 139, vol. 2, p. 313, Gammel's Laws of Texas; Act of Jan. 15, 1841, p. 130, vol. 2, p. 594, Gammel's Laws of Texas; Act of Jan. 16, 1843, p. 35, vol. 2, p. 855, Gammel's Laws of Texas; Act of Jan. 19, 1841, p. 64, vol. 2, p. 528, Gammel's Laws of Texas; Act of Feb. 4, 1842, p. 105, vol. 2, p. 777, Gammel's Laws of Texas; Act of Dec. 22, 1836, p. 216, vol. 1, p. 1276, Gammel's Laws of Texas; Act of Dec. 14, 1837, p. 62, vol. 1, p. 1404, Gammel's Laws of Texas; Act of May 12, 1846, p. 260, vol. 2, p. 1566, Gammel's Laws of Texas; Act of Feb. 10, 1852, p. 58, vol. 3, 936, Gammel's Laws of Texas; Act of Aug. 30, 1856, p. 81, vol. 4, p. 499, Gammel's Laws of Texas; Act of Aug. 30, 1856, p. 74, vol. 4, p. 492, Gammel's Laws of Texas; House v. Talbot, 51 Texas, 462; Hamilton v. Avery, 20 Texas, 612; Sherwood v. Fleming, 25 Texas Supp., 408; Wright v. Hawkins, 28 Texas, 452; Gullett v. O'Connor, 54 Texas, 409; Milam County v. Bateman, 54 Texas, 153; Stubblefield v. Hanson, 94 S. W., 408; Johnson v. Eldridge, 49 Texas, 515; Tex.-Mex. Railway Co. v. Locke, 74 Texas, 370; McWhirter v. Allen, 1 Texas Civ. App., 649; Threadgill v. Bickerstaff, 87 Texas, 522; Snider v. Methvin, 60 Texas, 489.

The fact that a certificate was not on file in the General Land Office on November 29, 1871, and was not filed there within eight months thereafter, is not, of itself, sufficient to forfeit, or render null and void, a survey made by virtue of a headright certificate issued in 1839 or 1845, and surveyed in April, 1856, and field notes filed in General Land Office July 14, 1856, because such certificate was not

required by law to be filed in the General Land Office, and title vested whether it was so filed or not, and the Act of November 29, 1871, was not intended to have the effect of forfeiting any such survey, and could not have any such effect, even if so intended.    Same authorities.

The John M. Bowyer survey and patent, under which appellants claim, are absolutely null and void; because the survey was made on appropriated land, and land titled and equitably owned under color of title from the sovereignty of the State, evidence of the appropriation of which was on the county records and in the General Land Office, and the land was actually occupied by the owner, or some person holding for him, and this land was therefore appropriated and segregated from the public domain, and not subject to location, and therefore the appellants had no such title as would sustain this action. Sec. 2, art. 14, of Constitution of 1876; Rev. Stats., art. 4208; Rev. Stats., art 4057; Day Land & Cattle Co. v. State, 68 Texas, 526; Adams v. Houston & T. C. Ry., 70 Texas, 268; Massey v. Galveston, H. & S. A. Ry. Co., 7 Texas, Civ. App., 650; Besson v. Richards, 24 Texas Civ. App., 64; Vance v. Lindsey, 60 Texas, 287; McKinney v. Grassmeyer, 51 Texas, 382; Ellis v. Batts, 26 Texas, 706; Groesbeck v. Harris, 82 Texas, 411; Eyl v. State, 84 S. W., 612.

MR. JUSTICE BROWN delivered the opinion of the court.

J. F. Keith and the Keith Lumber Company brought this suit against Gustan Guedry to recover title and possession of so much of the John M. Bowyer 1238½ acres survey as is in conflict with the John P. Wilds 640 acres survey, situated in Hardin County.   Keith and the Keith Lumber Company claimed under John H. Kirby by warranty deed, and made him a party defendant in the suit.    The petition contained the usual allegations in actions of trespass to try title, and also set up a claim on the part of the plaintiffs to the land under the statute of three years limitation.

The defendant disclaimed title to all of the land except that covered by the Wilds survey, which he described in his answer, and answered by a plea of not guilty and of three, five and ten years statutes of limitation.    The trial court instructed the jury as follows:

"You are instructed by the court that unless the plaintiff can recover under the statute of three years limitation (upon which you will hereinafter be instructed), then your verdict should be for the defendant Gustan Guedry upon the issue of title to the land."

The jury returned a verdict for the defendant.

We extract from the opinion of the Court of Civil Appeals the following statement of the facts of the case:

"The appellants claim under the John Bowyer survey of 1238½ acres, which was surveyed March 30, 1881, for J. W. Lawrence, by virtue of duplicate certificate No. 35/137 issued January 24, 1879, in lieu of certificate No. 1062, issued by the Board of Land Commissioners of Harris County on August 9, 1851, to John M. Bowyer. The field notes of the survey were filed in the General Land Office April 12, 1881, and on October 25 of that year were endorsed as being in conflict with the John P. Wilds survey, and, on November 9, 1883, were endorsed corrected.   On July 2, 1886, patent was issued for

the land described by the field notes to Levi Ketchum and James D. Rhea, as assignees of James M. Bowyer, which was recorded in Hardin County, where the land is situated, in 1897. It is conceded by the appellee that appellants connected themselves by a complete chain of title with the patentees.

"The appellees claim the John P. Wilds unpatented survey of 640 acres which, except a small portion in conflict with the Cochran survey, is covered by the Bowyer survey, claimed by appellants. This survey was made on April 30, 1856, by virtue of the land certificate hereinafter mentioned and the field notes thereof filed in the General Land Office, July 14, 1856.

"On July 4, 1839, the Board of Land Commissioners of Jefferson County, under the Act of January 4, 1838, issued to John P. Wilds conditional headright certificate No 46, for 640 acres, which certificate recites all the facts entitling him to it under the law and prerequisite to its issuance. On July 18, 1836, the clerk of said Board reported to the General Land Office a list of certificates issued by it, which included the one above mentioned. The Board of Commissioners appointed under the Act of January 29, 1840, to inspect the records of the Boards of Land Commissioners, and ascertain by satisfactory testimony what certificates for land had been issued by the respective Boards to legal claimants, and report to the Commissioners of the General Land Office, such certificates as they should find to be genuine and legal, in its report of May 24, 1841, pronounced such conditional certificate genuine and legally issued. On November 3, 1845, the Board of Land Commissioners of Jefferson County, under the Act of January 15, 1841, defining the mode by which the holders of conditional certificates shall establish the same, issued to John P. Wilds his certificate No. 46 for 640 acres, he having established his right thereto in accordance with the provisions of said Act; the order of the Board reciting the names of the witnesses, the date and number of his conditional certificate, and its class and number of acres. The 640 acres in controversy was surveyed April 30, 1856, by A. H. Redding, surveyor of Jefferson County, which then included what is now Hardin County. The field notes of the survey recite that it was made by virtue of headright certificate No. 46, and they were recorded in the surveyor's office April 30, 1856; and were, as before stated, on July 14, 1856, with map thereto attached, filed in the General Land Office, and on March 27, 1886, they were, in such office, endorsed in pencil as being in conflict with the Bowyer survey.

"The evidence tends to show that a certificate was filed with the field notes, but whether the conditional or unconditional it does not disclose with any degree of certainty. It has not been in the Land Office since this suit was filed, and no witness who testified in the case had any recollection of ever having seen it there on file. The questions as to whether it was filed and if it was, which certificate, were not submitted to the jury, because deemed by the trial court of no importance, under its view of the case."

It was not disputed that the plaintiffs had the title which was granted by the State by virtue of the location of the John M. Bowyer survey and the defendant Gustan Guedry had the title which was

acquired by the location of the John P. Wilds survey. The case was brought to this court by writ of error sued out by the plaintiffs in the court below.

The statute of August 30, 1856, prescribed that when a survey of land had been made upon a conditional certificate and the field notes returned to the General Land Office the unconditional certificate should be returned and filed in the Land Office on or before the 1st day of August, 1857, and, upon failure to comply with that requirement, the survey should be forfeited. The terms of that statute do not apply to the present case because the testimony does not show that the survey in question was made by the conditional certificate issued to J. P. Wilds. It is at least doubtful, according to the findings of the Court of Civil Appeals, whether the survey was made by the conditional or the unconditional certificate, and, in such state of facts, the court will presume that it was made by virtue of the unconditional certificate, which would sustain the rights acquired thereby. One who claims the benefit of such forfeiture must prove the facts necessary to establish it. The constitutionality of the law of 1856 becomes immaterial in this state of the evidence.

On the 29th day of November, 1871, the Legislature of this State enacted that, "in all locations and surveys of land heretofore made by virtue of any such certificate, as is specified in the first section of this Act, and in which the field notes have been returned to the General Land Office and the certificate by virtue of which the survey was made is not on file in the General Land Office, nor has been withdrawn for location of unlocated balance as is provided in the first section of this Act, such certificate shall be returned to, and filed in the General Land Office within eight months from the passage of this Act, or the location and survey made by virtue thereof, shall be null and void." The J. P. Wilds certificate being a headright was embraced in the terms of the first section of that Act, therefore, included in the part of the second section copied above. At the date of that enactment the J. P. Wilds certificate was not in the General Land Office, neither was it returned to that office prior to the 29th day of July, 1872. It follows that by the unmistakable language of the law the survey made under that certificate became void, and, on March 30, 1881, the land was subject to location and appropriation by the certificate of John M. Bowyer, then located thereon, unless it shall appear that the unconditional certificate was at some time prior to July 29, 1872, on file in the General Land Office.

The Honorable Court of Civil Appeals laid down these propositions: (1) That the issuance of the certificate to J. P. Wilds constituted a contract between him and the State under which he was entitled to appropriate 640 acres of the public domain. (2) That the location and survey of the land and return of the field notes to the General Land Office under that certificate constituted a vested right in the owner of it to that survey of land. Upon these propositions the Court of Civil Appeals based its conclusion that the Act of November 29, 1871, was in conflict with article 1, section 16, of the Constitution of the State, which reads as follows: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation

of contracts, shall be made." It is claimed that the law is retroactive and violated the obligation of the contract and impaired the vested right secured by the location and survey. The Act of 1871 here in question did not in any manner impair the rights of the grantee to the certificate issued to Wilds nor did it destroy the right to acquire. land by locating it; only the location and survey are made void. After the forfeiture of the survey the certificate might still have been located upon the public domain of the State, therefore, there was no impairment of the terms or the legal effect of the contract between the State and the citizen. The law did not destroy the right acquired by the location. "In all such cases, however, the imperfect right is lost through the failure of the person who claims, and seeks to assert it, to do what he knew he must do, and without which the law promised nothing. That the law may be passed after the imperfect right has an existence does not make it objectionable."

It is true that a survey under the Wilds certificate and the return of the field notes and certificate would have constituted a vested right in that land to the extent that it secured to the owner of the certificate a right to perfect his imperfect title to the land in the manner and time prescribed by law, or that should thereafter be prescribed, but it did not invest the owner with the title to the land; that remained in the State until the patent should be issued. In order to complete his title Wilds, or his assignee, was required to present the certificate to the Commissioner of the General Land Office and procure a patent for the land. The location and survey could not have been perfected into full title without presenting the certificate to the Commissioner of the General Land Office and depositing it with him. It would be implied that the certificate upon which the patent was issued should be delivered up to the State. The Legislature had the authority to prescribe a time within which those Acts should be performed and to declare a forfeiture of the survey on failure of the owner to comply with the terms expressed. Snider v. Methvin, 60 Texas, 499. In that case this court said:

"That the Legislature may prescribe a time within which a person must perform acts necessary to the vestiture of title to land is certainly true; and that in case of failure to comply with such a requirement, imperfect rights, such rights as could be made perfect only by compliance, may be annulled by legislation declaring the utmost limit of time which shall be given to perform such acts.

"Instances of the exercise of such power by the Legislature is seen in those Acts requiring surveys already made to be returned within a given time or the surveys to become null and void, and in Acts prescribing the period within which land certificates of the various classes should be presented to the several boards and tribunals created to determine the validity and genuineness of such claims."

To the instances mentioned by the court we would add the following: In 1876 the Legislature enacted a law providing that in case the records of deeds of any county had been, or should be, destroyed by fire, every owner of land whose deed had been recorded in said records should have four years time within which to re-record the instrument, and, in case of failure to do so, the destroyed record

should no longer constitute notice of the existence of the deed. The Supreme Court sustained this law as being valid. (O'Neal v. Pettus, 79 Texas, 254.)

On the 5th day of February, 1840, the Congress of the Republic of Texas passed an Act whereby it required that all of a certain class of certificates which had been previously issued should be presented to a Board of Commissioners created by that Act within a given time and that the person claiming to own such certificate should be required to establish its validity and in case it was not presented or not proved to be genuine the right under such certificate should cease. The Supreme Court of the State held that law to be constitutional although it did in fact destroy the right claimed to have been acquired by reason of the issuance of the certificate. (Hosner v. DeYoung, 1 Texas, 764.)

In the year 1856 the Legislature passed a law which required that each owner of a land certificate of certain classes theretofore issued should present his certificate to a Commissioner to be appointed and by proof establish its validity, and failing to do so the certificate should cease to be of any force. That law was sustained in an opinion delivered by Chief Justice Moore in the case of Durrett v. Crosby, 28 Texas, 688. Other similar laws which have been sustained might be cited but we deem these sufficient. We are of opinion that the Court of Civil Appeals erred in holding the Act of the 29th of November, 1871, to be void, and for such error the judgment of this case must be reversed and the cause remanded.

In remanding the cause we think it proper to say that, the State having issued a patent upon the location made under the Bowyer certificate, it will devolve upon the defendant below to prove that the unconditional certificate issued to J. P. Wilds was located and the field notes and certificate returned to and deposited in the General Land Office at some time prior to the 29th day of July, 1872. Such proof in our opinion would show a vested right which would be superior to the right upon which the patent was issued, unless the plaintiffs shall prove that, after the Wilds certificate had been deposited in the Land Office, it was withdrawn therefrom by the owner of the certificate, or by some person authorized by him to do so. (Snider v. Methvin, cited above.) If such proof should be made by the plaintiffs, then the survey made by the Wilds certificate must be held to have been forfeited under the Act of November 29, 1871, and plaintiffs would be entitled to recover the land in controversy.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

In stating its findings of fact the Court of Civil Appeals said, "the evidence tends to show that a certificate was filed with the field notes, but it had not been in the Land Office since the suit was filed and no witness, who testified, had seen it." "It may be assumed, as we will for the purpose of this appeal, that neither certificate was ever filed in the Land Office with the field notes of the survey."

It will be seen that the case was presented to this court upon the

assumption of a fact which was equivalent to a finding by the Court of Civil Appeals and, in preparing the opinion, the fact was stated to be as it was assumed to be. The defendant in error files a motion for rehearing requesting a correction of the statement. We make the statement so that no prejudice to defendant in error may occur therefrom, but the opinion correctly states the substance of the finding of the Honorable Court of Civil Appeals. The motion will be overruled.