### WANTLAND et al. v. COWDEN et al.

#### No. 4623.

Court of Civil Appeals of Texas. Texarkana.

June 12, 1935.

Rehearing Denied Nov. 14, 1935.

Milton Greer Mell and Gus Morris, both of Gilmer, Smithdeal, Shook, Spence & Bowyer, of Dallas, and Kenley & Kenley, of Wichita Falls, for appellants.

C. E. Florence and Edwin M. Fulton, both of Gilmer, Walace Hawkins and W. H. Francis, both of Dallas, R. E. Seagler, of Houston, Wynne & Wynne, of Longview, and Bryan, Stone, Wade & Agerton, of Fort Worth, for appellees.

SELLERS, Justice.

Ellen Todd Wantland, joined by her husband, C. E. Wantland, and R. O. Kinley brought this suit against J. B. Cowden and a great number of other defendants not necessary here to name. The suit is to cancel a certain deed executed by Ellen Todd Wantland and her husband to J. B. Cowden on December 4, 1932, on the ground of fraud in securing its execution.

The land involved is an undivided ½ interest in 112.4 acres, a part of the David Ferguson H. R. survey located in Upshur county. The plaintiffs in a second count in their petition allege the statutory action of trespass to try title. The third and fourth counts of plaintiffs' petition allege title to the land under the five and ten-year statutes of limitation; and under a fifth count plaintiffs seek an accounting for the oil taken from the premises by defendants.

The defendants in their answer demur generally to plaintiffs' petition and also urge a number of special exceptions and deny generally that they were guilty of any wrongs by plaintiffs, and set up in bar of plaintiffs' cause of action the three, four, five, ten, and twenty-five-year statutes of limitation. And by way of cross-action, the defendants allege the statutory action in trespass to try title, and also claim title under the three, five, ten, and twenty-five-year statutes of limitation.

The case was tried to a jury and some thirty-four issues were submitted by the court for the jury's consideration which were all answered in favor of defendants. In accordance with the jury's verdict, the court entered judgment for the defendants for the title to the land. Plaintiffs have duly prosecuted their appeal to this court.

Appellants have more than two hundred assignments of error in their brief, all of which relate to the evidence and the trial of the case with respect to the cancellation of the December 4, 1932, deed executed by Ellen Todd Wantland and her husband to J. B. Cowden. The jury having found that no fraud was practiced, the court refused to cancel the deed. The conclusion reached by this court renders a consideration of these assignments unnecessary. It is the view of this court that appellants failed to connect themselves with the title to the land at the time the deed of December 4, 1932, was executed, and therefore any fraud practiced upon appellants Ellen Todd Wantland and her husband in securing the execution of that deed is immaterial since the cancellation of such deed would not restore to such appellants any title to the land for the reasons hereinafter pointed out.

The history of the title to this land as disclosed by the evidence will be briefly set out. In 1840 David Ferguson secured a judgment against the Republic of Texas in the district court of Harrison county, Republic of Texas, for a quantum of ⅔ of a league and one labor of land.

It appears from another judgment of the district court of Harrison county, state of Texas, that David Ferguson sold this right to the land decreed to him to Peter Whetstone, but that neither David Ferguson nor Peter Whetstone ever received a certificate for said land. And it further appears from this judgment that Dicy Whetstone, the administratrix of the estate of Peter Whetstone, filed her petition in the court setting up the above facts and prayed for a certificate to be issued to her as the administratrix of the estate of Peter Whetstone, who was the assignee of David Ferguson, and the district court of Harrison county issued to her the certificate for the land. The date of this judgment granting the certificate is January 11, 1849. It appears that a survey under this certificate was made for Dicy Whetstone by the deputy surveyor of Upshur county, Nacogdoches district, on December 26, 1849. The field notes made by the deputy surveyor were approved and recorded by the district surveyor of the Nacogdoches district on March 2, 1850. These field notes were filed in the general land office on May 8, 1851. It further appears that the field notes as originally furnished the land office were in some respects corrected by the county surveyor of Upshur county and again filed in the land office on January 1, 1857. Indorsed on these field notes is the following important correction of the field notes made in the general land office:

"This f. n. in its 4th call, with the East line of the A. T. McGee Sur. calls that distance 2088 varas, the f. n. of the McGee makes that line only 2050 varas long. Then again in 7th course the call is East 360 varas to a stake in the line of a league survey in name of Wm. King, when in reality there are two surveys, both patented —one in the name of H. Alsup and one in name of J. R. Wadkins—between the East line of this survey and said King's West line—the 8th course is S 1350 varas to S. W. corner of King, and as noted above, it is S. W. corner of Wadkins. By reason of these and some other minor objections, it will be necessary to have a corrected f. n. of this survey, and make same conform to surrounding surveys as they exist today. With said corrected f. n. send cert. sketch showing all corners found on the ground, course and distance of all lines, and what it is on the ground that will change distances, if such is the case. Such f. n. will also have to be recorded in both Upshur and Gregg Counties, and the survey appears to be about half in each county.

"2–20–'04 Hedick.

"It seems that there is a small variance between the N line of this survey and the S line of the A. T. McGee survey, as McGee's E line has a length of only 2050 varas—instead of 2088 varas called for here.

"Sept. 27, '06. E. Schutz."

There was another survey made of this land on May 20, 1911, by W. C. Elms, county surveyor of Upshur county, and the field notes made by him were recorded in his office and also in the office of the county surveyor of Gregg county, on July 27, 1911, where a part of the land was located, and these corrected field notes were filed in the general land office on August 14, 1911, were found to be correct, and approved, and the land patented to the heirs of Peter Whetstone, assignee of David Ferguson, on September 5, 1911.

By a regular chain of transfer about which there is no dispute on this appeal, the land certificate issued by the district court of Harrison county was transferred from the Whetstones down to J. R. Edwards, deceased, who was the father of appellant Ellen Todd Wantland. The appellant Ellen Todd Wantland, on January 19, 1903, being at the time Ellen Todd, together with her sister, May English, being the only heirs of J. R. Edwards, executed a warranty deed to John O'Byrne describing the land involved by metes and bounds, and for a consideration of $200 which was paid, and the appellant Ellen Todd Wantland received her part of the consideration for the land. It further appears that at the time this deed was made Ellen Todd Wantland was married to a Mr. Todd and was living with him at the time. It further appears that her husband did not join her in this conveyance and there was no privy acknowledgment of the deed by her separate and apart from her husband as was required by the statute (Rev. St. 1925, art. 1299) for the conveyance of the wife's separate property. And it is the contention of appellants that this deed to O'Byrne was void and he acquired no title to the land thereby. The appellees all claim under the title to O'Byrne through this deed. O'Byrne had possession of this land when the patent issued and it was admitted by Mrs. Wantland that she intended to sell

to O'Byrne whatever title she had to the land and recognized the deed as valid until 1932, when she was advised for the first time that her deed to O'Byrne was void for the reasons above mentioned, since which time she has claimed an undivided ½ interest in the land.

If at the time the deed was made to O'Byrne by appellant Mrs. Wantland she had an equitable title to the land involved by virtue of being the owner of the ½ interest in the David Ferguson land certificate, the authorities of this state are all in accord to the effect that such deed is void and no title passed thereby since her husband did not join in the deed and her privy acknowledgment was not taken as the law directs. This brings us to a consideration of the vital point in this case, and that is to determine whether the land certificate on January 19, 1903, when the appellant Mrs. Wantland conveyed it to O'Byrne, was, from the record before us, to be treated as real estate and subject to the statutes of this state with reference to conveyance of the wife's separate real estate, or whether it was at the time to be treated as personalty and subject to transfer without the joinder of the husband and without a privy acknowledgment on her part. It is now the settled law of this state that land certificates when issued and unlocated, so far as all domestic questions are concerned, are to be treated as strictly personalty. Richardson v. Temple Lumber Co. (Tex. Civ, App.) 46 S.W.(2d) 737. But when the certificate is located, it then becomes chattel real and its transfer is governed by the law regulating the transfer of land. Simpson v. Chapman, 45 Tex. 560.

It has been held that a certificate is deemed to have been located on land when a survey has been made and that date must be taken to be the inception of the locator's rights. Hollingsworth v. Holshousen, 17 Tex. 41. In this case the first act with reference to a location of this certificate, so far as the record discloses, was the making of a survey of the land on December 18, 1849. And in our opinion this land certificate on this date became a chattel real and subject to the law with respect thereto and this is true although the field notes made by the surveyor were erroneous and required correction. Webb v. Goldsmith (Tex. Civ. App.) 221 S. W. 690.

The right of one under a located land certificate is held to be an imperfect title to the land, such title to be perfected in the manner and time prescribed, or which should thereafter be prescribed by law. Keith v. Guedry, 103 Tex. 160, 122 S. W. 17, 125 S. W. 5.

Articles 7096 and 7097 of Paschal's Digest, which were enacted by the Legislature in 1871, provide:

"Article 7096. In all cases of the location and survey of lands, by virtue of any genuine land certificate, including headrights of the first, second, and third class, bounty warrants, scrip, and all other valid land certificates, warrants, and scrip, the certificate by virtue of which the location and survey is made shall be returned to the general land office with the field-notes, within the time prescribed by law for returning field-notes; and the withdrawal of such certificate from the general land office shall render such location and survey null and void: Provided, That when a certificate has been located in part, and returned to the general land office, the party owning or controlling such certificate may withdraw the same for the purpose of locating the unlocated balance thereof, and it shall be the duty of the commissioner of the general land office to indorse on every certificate thus withdrawn the amount of land already located, of which field-notes have been returned and are on file in the general land office, and such withdrawal shall not in any manner impair the validity of the location."

"Article 7097. In all locations and surveys of land heretofore made by virtue of any such certificate as is specified in the first section of this act, and in which the field-notes have been returned to the general land office, and the certificate by virtue of which the survey was made is not on file in the general land office, nor has been withdrawn for location of unlocated balance, as is provided in the first section of this act, such certificate shall be returned to and filed in the general land office within eight months from the passage of this act, or the location and survey made by virtue thereof shall be null and void."

The validity of these acts was upheld by the Supreme Court at an early date. Snider v. Methvin, 60 Tex. 487. This opinion was followed later by the same court in Keith v. Guedry, supra. It will

be observed that article 7097 requires that in all locations and surveys of land heretofore made by virtue of any such certificate as is specified in article 7096 (which includes the certificate involved in this case), in which the field notes have been returned to the general land office (as was done in this case), and the certificate by virtue of which the survey was made is not on file in the general land office, nor has been withdrawn for location of unlocated balance, as is provided in article 7096, such certificate shall be returned to and filed in the general land office within eight months from the passage of this act, or the location and survey made by virtue thereof shall be null and void.

The certificate in this case does not show when it was filed in the general land office, and were there no other evidence contained in the statement of facts with reference to it, this court would presume that it was filed in the general land office within the time required by the above statutes. But it affirmatively appears in this case from the general land commissioner's correction of the field notes that the certificate was not on file in the general land office in 1904, which is a year after the appellant Mrs. Wantland conveyed the certificate to O'Byrne, for the land commissioner was there calling not only for corrected field notes but for the certificate also. The certificate, under the provision of article 7097, should on this date have been on file in the general land office, and since it was not, the location and survey under which the appellants claim was rendered void and no right accrued to appellant on this trial by virtue thereof.

It will not do to say that the certificate was withdrawn by the surveyor or any one else after it was filed with the commissioner of the general land office for the reason that the above statutes only have one proviso for the withdrawal of a certificate, and the facts of this case do not bring it within that proviso. Neither will it do to hold that the word "return," as used in the statutes above, contemplated a withdrawal of the certificate from the land office and the return thereof, for the reason that the Supreme Court in Snider v. Methvin, supra, has held that the word "return," as used in these statutes, means the transmission to and deposit of the certificate in the general land

office with intent that it should there remain. And it will be further observed that article 7096 provides that a withdrawal of the certificate from the land office will render the location void.

If we are correct in the conclusion above reached, it follows that there was no valid location of this certificate after 1871, when the first location was rendered null and void, before the conveyance of the certificate by appellant Mrs. Wantland to O'Byrne. And for that reason the certificate on that date must be treated as personal property and not subject to the statutes with reference to the conveyance of the wife's separate real estate. Since appellants' claim of title to the land is predicated entirely upon the theory that such certificate on the date of the conveyance to O'Byrne was to be treated as realty, they must be denied a recovery in this case.

The judgment of the trial court is in all things affirmed.