**TAYLOR–McCULLOCH CORPORATION**
**v. HUMBLE OIL & REFINING CO.**
**et al.**

**No. 2894.**

District Court, S. D. Texas, Houston Division.

Sept. 26, 1939.

Charles M. Alderson and C. F. Stevens, both of Houston, Tex., for plaintiff.

Fouts, Amerman & Moore, Vinson, Elkins, Weems & Francis, Edgar Monteith, E. J. Fountain, Kayser, Liddell, Benbow & Butler, and Farish, Durno & Gordon, all of Houston, Tex., Pitts & Liles, of Conroe, Tex., and Williams, Lee, Sears & Kennerly, of Houston, Tex., for defendants.

Roy Stevenson, W. M. Florer, Wm. Grimes, D. D. Bruton, W. N. Hooler, R. L. Cartwright, Jr., and W. M. Conroe, in pro per.

ATWELL, District Judge.

This suit was filed August 31st, 1937, and in June of the present year, I was designated to try it, both judges, Kennerly and Allred, of the southern district, having disqualified. I assigned it for trial at Houston on September 25th, 1939, and, as is hereinafter disclosed, there was much activity in the presentment of motions and various pleadings prior to that date.

Plaintiff alleges that it is a Delaware corporation. Certain motions and depositions and pleadings show that the corporation was organized in Delaware for the purpose of acting as the transferee of certain alleged interests in Montgomery County, Texas, lands. Conveyances were made by the alleged Texas owners to the corporation.

A motion to dismiss was made on the ground that the incorporation was fraudulent, and that the suit was, in fact by citizens of Texas. This motion was overruled at a former term, upon the authority of Giddens v. Estero Bay Estates, 5 Cir., 18 F. 2d 265, and Rojas-Adam Corp. v. Young, 5 Cir., 13 F.2d 988.

The suit is against nine corporations to-wit: Humble Oil and Refining Company, Navarro Oil Company, Rutherford Oil Corporation, Tybro Royalty Company, Hooper Oil Corporation, Hill & Hill, Harrison Oil Company, J. S. Abercrombie Company, and Houston Oil Company of Texas. Each of these corporations is a Texas corporation, with its principal office in the city of Houston, save and except Hill & Hill, Incorporated, which has its principal office at Fort Worth, Texas.

It is also against Mrs. Margaret Alexander, and husband, O. L. Alexander; Mrs. Zoula Schaefer, and husband, J. H. Schaefer; E. I. Conroe, William Conroe, W. N. Hooper, and H. M. Crighton, all residents of Montgomery County, Texas. Also against D. D. Bruton, Adrian Moore, E. A. Showers, and J. D. Cooper, of Harris County, Texas; and against W. S. York of Smith County, Texas; R. L. Cartwright and R. L. Cartwright, Jr., of McLennan and Dallas Counties, respectively, and against Bertha H. Busswell, and Henry C. Busswell, of ———— County, Texas.

The plaintiff claims that on January 1st, 1936, it was and still is the owner in fee simple of three hundred and twenty acres of land, known as the C. M. K. Taylor tract, in Montgomery County, Texas, and that on January 1, 1935, the defendants unlawfully entered upon and dispossessed it from such premises, and withholds the same from it. That the defendants have held the same for over two years and have extracted approximately $5,000,000 worth of oil therefrom. It seeks title and possession as well as for damages.

On November 26, 1937, Roy Stevenson, W. M. Florer, and William Grimes, all of Harris County, Texas, filed a motion to intervene. Finally, on August 21st, 1939, an amended intervention was filed, in answer to the request by the defendants for a bill of particulars as to intervenors' claim.

The intervenors sue the plaintiff and all of the defendants for one hundred and forty (140) of the three hundred and twenty (320) acres, and seek $100,000,000 damages for the minerals extracted therefrom. They claim that the defendants and the plaintiff entered unlawfully upon the premises on October 31st, 1932. They complain against both the defendants and the plaintiff for

illegal ouster, appropriation and possession. They attack the right of the plaintiff to sue for the land, claiming that certain of the heirs, whom it is asserted transferred their interests to the plaintiff, had already given powers-of-attorney to one Roy Stevenson; and that Stevenson had, in turn, transferred certain interests thereunder to C. M. Alderson, William Grimes, and W. W. Florer, and that "if any rights are being asserted by the plaintiff, that the plaintiff is really the trustee for the intervenors."

That after Alderson was employed by Stevenson, he, Alderson, assisted in forming the plaintiff corporation, and secured certain of the transferring heirs to convey interests, which they had already conveyed under the powers-of-attorney, to the plaintiff corporation. That Alderson exercised a sort of a control over the heirs and succeeded in getting a contract for a larger part of what was recovered, and that he prevented certain activities.

Allegations are also made against the defendants, to the effect that they, and their agents and attorneys and employees and other co-conspirators, entered into a conspiracy and a fraudulent agreement to practice fraud with reference to the title to the land, and for the securing of witnesses to give false testimony, and to destroy title records, and to debauch jurors. Likewise, that they conspired to charge, and did charge, one of the intervenors falsely in a criminal case, and secured his conviction when they, themselves, had done the act with which the said intervenor was charged.

That a jury convicted the said intervenor, Grimes, without regard to testimony; that this was because of a condition created around the court by the said defendants, their agents and attorneys, etc.

That the said conspirators have kept suits from being brought for the land, and, finally, when a suit was brought, they succeeded in having it dismissed without prosecution. That they caused certain records to disappear.

They then allege that, "If any of the defendants, are not parties to the conspiracy, they are, at least, trying to take charge of same to recover their claims herein."

Finally, they pray for an accounting, and that, "Intervenors have judgment against the defendants and plaintiff for the title and possession of their alleged interest in the described premises, that the cloud upon their title be removed, by reason of the premises, and that they be quieted in their title to and possession of the same, * * *."

A motion was made by the defendants to dismiss the intervention because of a failure to comply with an order for a bill of particulars. The motion was overruled.

All of the defendants, as well as the plaintiff, and intervenors, have filed various and sundry pleadings, motions, and replications, so that the record is voluminous.

There are motions by all of the defendants to strike the intervention. There is also a motion by the plaintiff to do the same thing. The plaintiff has now taken a nonsuit.

■ I find no order in the record authorizing the intervention. The intervenors make themselves plaintiffs against both the plaintiff and all of the defendants. The intervenors are citizens of Texas. They have no right to bring a suit against the defendants in the United States court. Their application for relief against the plaintiff puts them in the attitude of bringing an individual suit wherein all of the defendants and plaintiff are respondents.

One may intervene when a fund is held, or property is held by a court, to assert an interest therein. That is not the situation here. Intervenors have no such basis upon which to enter. If they come in good faith, and I see no reason to question that, even though some of the pleadings by some of the defendants raise that issue, and seek to recover one hundred and forty (140) of the three hundred and twenty (320) acres for themselves, against all of the parties in this suit, whether plaintiff, or defendants, then they are liable to the requisites of jurisdiction. There being no diversity upon a shaping such as that, their intervention must be dismissed. See such cases as Aiken v. Cornell, 5 Cir., 90 F.2d 567, which approves a district court opinion, to the same effect shown in Gaddis v. Junker, D.C., 27 F.2d 156.

■ Their attempt to plead a cause arising under the Constitution and laws of the United States is insufficient. There appears no sufficient allegation of state approval of the acts of which the intervenors complain.

The court considered and took under advisement, after lengthy oral argument by the plaintiff and defendants at Dallas, earlier this month, motions which challenge the right of the plaintiff to recover. The intervenors, though given notice of the setting of the motions, did not appear.

■ Looking at the merits, the plaintiff asserts a transfer from Taylor to McCulloch. If that transfer conveys nothing, then the plaintiff got nothing from the alleged heirs of McCulloch, and the intervenors got nothing by their powers of attorney from some of the same heirs. That transfer, so far as pertinent is, "For and in consideration of the sum of $125.00 in hand paid by the Party of the Second Part to the Party of the First Part, the receipt of which is hereby acknowledged and confessed. The said Party of the First Part, by this act, has bargained, granted, sold, conveyed and released, and doth hereby bargain, grant, sell, convey and release unto the Party of the Second Part, his heirs, assigns, and legal representatives, the following described land, and premises, lying and being situate in the County of Montgomery, and the State of Texas, to-wit: Three hundred and twenty (320) acres of land, and numbered 100 & 61 (161) and patented in my name, the 21st day of May, 1840, together with all and singular the rights, members, improvements, hereditaments and appurtenances to the same belonging in anywise incident or appertaining, and the reversions and remainders, rents, issues and profits thereof." Signed, M. K. Taylor; witness, Sam Houston, Charles DeSelding. (Transfer is from Marcellus K. Taylor of the city of Washington as the party of the first part, to William G. McCulloch of the city of New York, as the party of the second part). It purports to be acknowledged before Charles DeSelding by Marcellus K. Taylor on February 19th, 1849.

No patent was issued to the land. It is seriously contended that there was no survey, that headright No. 161 was a conditional headright, and that certain of the statutes and decisions of Texas preclude any presumption of survey, or of the filing of field notes.

Even a casual inspection of the instrument precludes any consideration of it as a transfer of title to the three hundred and twenty acres. There is no sufficient description. If it be viewed as a transfer of the headright, then there is, and was, no such action under it as the then-existing status required.

■ The admissions in the pleadings by the plaintiff show the issuance of a patent some thirty years after that, to the title source of the present defendants and a regular chain of title from that source to the defendants. Shepard v. Avery, 89 Tex. 301, 34 S.W. 440; Gulf Production Co. v. State, Tex.Civ.App., 231 S.W. 124; Strimpfler v. Roberts, 18 Pa. 283, 57 Am.Dec. 606.

The plaintiff insisted that the court should presume survey, the filing of field notes, and the doing of such other acts as give birth to a title. It claimed that the recital in the transfer last above quoted to the effect that, "and patented in my name the 21st day of May, 1840," is sufficient to support a presumption that a patent had been issued on that date. It also suggests that there was laxness in the patent office and some records were destroyed. It invoked the rule with reference to ancient instruments in support of its contention. The ancient instrument doctrine has an essential ingredient which is lacking here. There must be certain ear-marks and there must be appropriate custody.

Taking the entire case of the plaintiff, as it now exists, under the admissions made in accordance with the present rules, I feel doubtful—seriously doubtful—that there are any questions of fact which might be solved by a jury, which would lend any additional support for the plaintiff's case.

All that may be said for it is, that there is a transfer of a headright. Such a transfer might be made without any written instrument at all. Nothing seems to have been done under it, nor prior to that. To permit the plaintiff to recover would be to unsettle a patent which was legally issued, and a chain of title thereunder in which the present defendants were innocent purchasers for value.

■ The certificate was conditional. It was issued under the Act of January 4th, 1839, Laws of Republic 1839, p. 35. The Act applied to persons coming to the Republic of Texas since the first of October, 1837, and who might come to it by the first of January, 1840. Also, to all permanent resident citizens of Texas who had or might arrive to the age required of immigrants by the first section of the Act to be entitled to land upon the same conditions as the immigrants were. The provisions were prospective. Three years residence in the Republic, and the doing of such other acts as were required, were necessary before any unconditional certificate could be issued.

There were three classes of these headright certificates. The certificate we have before us was of the third class. See

Sayles Real Estate Laws of Texas, Vol. 1, page 238, Article 237: "Third Class. Conditional certificates issued to immigrants who arrived after October 1st, 1837, and by January 1st, 1840, and to young men, permanent resident citizens who became seventeen years of age before January 1st, 1840." Such conditional certificates were not transferable.

It seems that it was not possible for an unconditional certificate to be originally issued under the Act of January 4, 1839. The approval by the Traveling Board is of no value, because its function was to approve only the validity of the certificate, and its nature was not changed into anything else. Again, it was not the intent, apparently, of the Legislature, that the third class certificate should be passed upon by the Traveling Board. They were to pass upon the first and second class. Therefore, the approval of the Board gives it no virtue that it did not have before such approval. Peacock v. Hammond, 6 Tex. 544. See Act of 1856, Gammel's Laws of Texas, Vol. 4, page 432; Barton Peck v. James A. Moody et al., 23 Tex. 93; Act of Nov. 29, 1871, Vol. 7, page 47, Gammel's Laws of Texas; Keith v. Guedry, 122 S. W. 17, 103 Tex. 160.

Considering that intervention in an appropriate case is within the sound discretion of the court, and that a useless thing will not be done by the court, and that the plaintiff now takes a non-suit, and that intervenors cannot sue as here attempted, the motions to dismiss the same are sustained.